**No. 22-1399**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

**CRAIG JOHNSON, JR,**
**Petitioner-Appellant,**

**v.**

**UNITED STATES,**
**Defendant-Appellee**

---

**APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN NO. 19-904C, JUDGE ZACHARY N. SOMERS**

---

# BRIEF FOR MR. CRAIG JOHNSON, JR.

**WILLIAM E. CASSARA, ESQ.**
**WILLIAM E. CASSARA P.C.**
**PO BOX 2688**
**EVANS, GA 30809**
**(706) 860-5769**

**Counsel for Appellant**

# TABLE OF CONTENTS

**PAGE**


TABLE OF AUTHORITIES .......... 3

STATEMENT OF RELATED CASES .......... 4

JURISDICTIONAL STATEMENT .......... 5

STATEMENT OF THE ISSUES .......... 6

STATEMENT OF THE CASE .......... 6

I. NATURE OF THE CASE AND PROCEEDINGS BELOW .......... 6

II. STATEMENT OF THE FACTS .......... 7

A. Procedural History .......... 10

B. BCNR Remand .......... 11

C. Trial Court Proceedings .......... 11

SUMMARY OF THE ARGUMENT .......... 12

ARGUMENT .......... 12

I. STANDARD OF REVIEW .......... 12

II. THE BNCR'S ACTIONS WERE ARBITRARY, CAPRICIOUS, CONTRARY TO LAW, AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE SET ASIDE .......... 13

CONCLUSION AND REQUEST FOR RELIEF .......... 19

## TABLE OF AUTHORITIES

### CASES

*Barnes v. United States*, 473 F.3d 1356 (Fed. Cir. 2007) .................................. 12

*Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005) .................................. 13

*Heisig v. United States,* 719 F.2d 1153 (Fed. Cir. 1983) .................................. 13

*Strickland v. United States,* 423 F.3d 1335 (Fed. Cir. 2005) .............................. 12

### STATUTES

28 U.S.C. § 1295(a)(3) .................................................................................. 5

28 U.S.C. § 1491 ........................................................................................... 5

37 U.S.C. § 204 ............................................................................................ 5, 6

### REGULATIONS

MCO 1001.52J ............................................................................................ 7, 18

MCO 1900.16 ............................................................................................. 13-15

MCO P1040R.35B ........................................................................................ 16

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, Mr. Johnson's counsel is unaware of any other appeals taken from the same proceedings before the United States Court of Federal Claims to this Court or any other appellate court. Also, counsel is unaware of any cases that will directly affect or be directly affected by this Court's decision in this appeal.

No. 22-1399

IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CRAIG JOHNSON, JR,
Petitioner-Appellant,

v.

UNITED STATES,
Defendant-Appellee

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
IN NO. 19-904C, JUDGE ZACHARY N. SOMERS

**BRIEF FOR MR. JOHNSON, JR.**
**JURISDICTIONAL STATEMENT**

The United States Court of Federal Claims possessed jurisdiction over the complaint based on the Tucker Act, 28 U.S.C. § 1491, and the Military Pay Act, 37 U.S.C. § 204, a money-mandating statute. This Court possesses jurisdiction under 28 U.S.C. § 1295(a)(3) because Mr. Johnson, Jr. appealed the October 28, 2021, final judgment of the United States Court of Federal Claims to this Court within 60 days of his filing a motion to alter or amend the factual findings under Rule 52(b), which was denied on December 9, 2021. Appx11.

## STATEMENT OF THE ISSUES

The United States Marine Corps separated appellant early and without separation proceedings as a result of his failure to execute PCS orders. Mr. Johnson was denied notice and opportunity to a separation board before being separated with a stigmatizing reentry code that prevented his promotion to Warrant Officer. The Board for Correction of Naval Records (BCNR) rejected Mr. Johnson requests to correct his military records. The trial court remanded the BCNR to again consider Mr. Johnson's request, and they declined to change their opinion. The Court of Federal Claims held that the BCNR's decision was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Did the trial court err?

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE AND PROCEEDINGS BELOW

Mr. Johnson appeals from *Johnson v. United States*, No. 19-904 C (2019), Appx1-12. Mr. Johnson brought suit at the Court of Federal Claims under the Military Pay Act, 37 U.S.C. § 204, challenging the BCNR's decision denying his request to correct his records and for military backpay. Appx18. The trial court concluded that Mr. Johnson failed to meet the burden of presenting cogent and clearly convincing evidence that the BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Appx1-12. The trial

court granted the United States' Motion for Judgment on the Administrative Record and denied Mr. Johnson's Cross-Motion for the same. Appx1-12.

## II. STATEMENT OF THE FACTS

Mr. Johnson, a United States Marine, served honorably on active duty in the Marine Corps for over ten years and over seven years in the Select Marine Corps Reserve. He entered active duty on 31 May 2006. He was trained in and served primarily as an Administrative Specialist. Appx19.

On 13 April 1999, appellant enlisted in the U.S. Marine Corps Reserve (USMCR) for eight years, and on 12 May 2006, he extended his enlistment for 23 months to affiliate with the Active Reserve (AR) Program. Appx528. On 25 November 2008, he reenlisted in the USMCR for three years, receiving an enlistment bonus. Appx529. On 10 November 2011, the appellant reenlisted in the USMCR for 48 months, which included a one-year extension to accept active-duty orders. In doing so, he became a "Career Designated Marine," a Marine who, as defined in MCO 1001.52J, has "successfully reenlisted for a second tour in the AR Program." Appx529.

On 17 March 2013, Mr. Johnson was issued permanent change of station (PCS) orders from Virginia Beach, Virginia, to Phoenix, Arizona, to serve as a prior-service recruiter for 36 months. Appx529. His report date was 9 June 2013,

which would have resulted in a period of 29 months on station prior to his scheduled end of active service (EAS) date of 9 November 2015. Appx529.

While attending the PSR training course, Mr. Johnson sought a stationing option closer to his family in Virginia Beach after some family matters. Appx529. In the weeks following, he reached out to Master Sergeant (MSgt) Smith via email and visited in person to determine steps he could take to change his Phoenix, Arizona assignment to a location closer to his family. Appx529. Mr. Johnson found another recruiter who agreed to swap orders with him, but his official request to swap orders and locations was denied by authorities. He then requested an extension on his report date to facilitate the sale of his family home, but that request was also denied. Appx529.

On 11 June 2013, Mr. Johnson was provided an Administrative Remarks (Page 11) entry that stated he had been assigned a reenlistment eligibility code of RE-3O because he would not reenlist/extend to comply with PCS orders. Appx529. The Page 11 entry further stated that, with this code, he "would not reenlist/extend to comply with PCS orders. Appx529. In addition, it stated he "would not be eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs or involuntary separation pay" unless specifically authorized by the Commandant of the Marine Corp (CMC). Appx529. Citing Marine Administrative Message (MARADMIN) 552/12, MSgt Smith coordinated

Mr. Johnson's release date from the AR program to reflect 30 June 2013. Appx529.

On 30 June 2013, Mr. Johnson was separated from the active status to the Individual Ready Reserve (IRR) and issued a Certificate of Release or Discharge from Active Duty (DD 214). Appx529. His DD Form 214 indicated he was "transferred to the FMCR" but was later corrected on 11 July 2013 by a Correction to DD Form 214 (DD Form 215) to reflect he was "transferred to the IRR." Appx529.

On 23 September 2013, Mr. Johnson was mobilized from the IRR to active duty and stationed in Quantico, VA. Appx529. On 13 December 2013, he was preliminarily approved by the Secretary of the Navy (SECNAV) for appointment to warrant officer, with an appointment date of 1 February 2014. Appx529-530. However, on 14 January 2014, he was notified that his promotion was delayed due to his previous assignment of a RE-3O reenlistment code. Appx530.

On 30 June 2016, Commander, Marine Corps Systems Command, notified Mr. Johnson that he was recommending his name be retained on the FY14 Warrant Officer Selection List and the RE-3O reenlistment code be removed from his record. Appx530. Additionally, he was advised of the opportunity to submit a written statement to the SECNAV via his chain of command. Appx530. On the same date, Mr. Johnson made a request to the SECNAV to remove the RE-3O

reenlistment code and remove the delay of appointment to warrant officer. Appx530.

On 24 September 2016, he completed his mobilization orders and was provided a DD Form 214. Appx530. On 13 December 2016, the Deputy Commandant (Manpower & Reserve Affairs) (DC (M&RA)) responded, informing Mr. Johnson that "before action can be taken on subject request, you must first petition the Board for Correction of Naval Records to request removal of your reentry code of RE-3O." Appx530. DC (M&RA) further stated the Board would "examine your record and any evidence submitted and then forward its recommendation to the SECNAV." Appx530.

## A. Procedural History

On 18 January 2017, Mr. Johnson petitioned the BCNR to remove the assigned RE-3O reentry code and grant his appointment to warrant officer. Appx44. His case, docket number NR20170000419, was considered by the Board and denied. Appx45. On 3 November 2017, he requested the Board reconsider its earlier denial. This second appeal was denied on 27 September 2018. Appx47-48.

On 20 June 2019, Mr. Johnson filed suit in the Court of Federal Claims, alleging wrongful discharge and denial of military pay. Appx 18-27. On 2 November 2019, the court granted an unopposed motion to remand the case to the Board for Correction of Naval Records. Appx520.

**B. BCNR Remand**

On 29 July 2020, BCNR issued their decision on remand. Appx528. The Board found that Mr. Johnson was not separated from service, but instead he was transferred to the IRR, which does not constitute a separation or discharge which would trigger separation due process protections. Appx528. The specific findings of the Board were as follows: the Board finds that you were not discharged from the service, and thus your contended procedural requirements of the MARCORSEPMAN did not apply. Your enlistment was an agreement to participate in the USMCR, and your transfer to a subcomponent of same (the IRR) was within the purview of your enlistment contract. Finally, you elected to participate in the AR Program, subject to its additional requirements for Reservists, and your election to refuse orders subjected you to the consequences detailed in the MARADMIN for same: an accelerated EAS and RE-3O reenlistment code noting your refusal of orders. Appx528.

**C. Court Opinion**

After the BCNR issued their decision, both parties filed their motions for judgment on the administrative record. Appx624, 630. The Court ordered oral argument on the motions, which took place on 4 May 2020. Appx725-726. After the oral argument, the Court ordered additional briefings. Appx751, 759. Finally, on 28 October 2021, the Court ordered its final Opinion and Order. Appx1. The

Court found that Plaintiff was properly separated and transferred to the IRR pursuant to authority provided in MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, none of which required a separation board or greater notice than the page 11 entry that Plaintiff signed. Appx1. On 24 November 2021, Plaintiff filed a motion to alter or amend judgment. Appx771. The Court of Claims denied the motion for reconsideration on 9 December 2021. Appx11.

## SUMMARY OF THE ARGUMENT

Mr. Johnson was denied notice and opportunity to a separation board before being separated with a stigmatizing reentry code that prevented his promotion to Warrant Officer. The Board for Correction of Naval Records (BCNR) rejected Mr. Johnson requests to correct his military records. The trial court, in granting the Government's motion for judgment on the administrative record, affirming that the BCNR's decision was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews the trial court's decision granting or denying a motion for judgment on the administrative record without deference. *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007). This Court "will not disturb the

decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.* (internal quotations omitted). A decision granting or denying a motion for judgment upon the administrative record is reviewed without deference. We apply the same standard of review as the United States Court of Federal Claims, which means "we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). The trial court's legal conclusions will not be reversed unless incorrect as a matter of law, and its factual findings will not be disturbed unless clearly erroneous. *Heisig v. United States*, 719 F.2d 1153, 1158 (Fed. Cir. 1983). Statutory or regulatory interpretation, however, is reviewed without deference. *Strickland v. United States*, 423 F.3d 1335, 1337 (Fed. Cir. 2005). *Barnes v. United States, 473 F.3d 1356, 1361 (Fed. Cir. 2007)*

## II. THE BCNR'S ACTIONS WERE ARBITRARY, CAPRICIOUS, CONTRARY TO LAW, AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE SET ASIDE.

The BCNR, on remand, made the finding that the Plaintiff was not "separated" from the Marine Corps, but instead "released from a period of active duty service." Appx550. The Board relies on the MARCORSEPMAN (Marine Corps Order (MCO) 1900.16) to support their position that Plaintiff was not separated from active duty, but instead transferred to the IRR. Appx550.

The Board said as follows:

> At the outset, the record must be corrected that you were not "separated" from the Marine Corps such that you were terminated from employment. Per the MARCORSEPMAN, Reservists in the AR Program are issued a DD Form 214 when released from a period of active duty service. These DD Form 214 termination of active duty documents are not separation documents that would fall under the purview of the MARCORSEPMAN chapter regarding total separation (or firing) from service, but instead note the completion of required active service. Additionally, the Board noted that in your contention, you incorrectly stated "separation to the FMCR" because the DD Form 215 issued on 11 July 2013 corrected your DD Form 214 to read "transferred to the IRR." Appx550.

However, as stated in appellant's brief in the lower court, the definition of "Separation" in the MARCORSEPMAN, para. 1002(50) is as follows:

> A general term which includes discharge, dismissal, dropping from the rolls, revocation of an appointment or commission, termination of an appointment, *release from active duty*, release from custody and control of the Marine Corps, or *transfer from active duty to the: IRR*, Fleet Marine Corps Reserve, Retired List, Temporary or Permanent Disability Retired List, or Retired Reserve and similar changes in an active or reserve status. Appx665.

This contradicts the BCNR's finding that the Plaintiff was not separated, he was instead "released" from active duty, as these exact exactions fall under the definition and specific examples of what entitles a separation. Mr. Johnson was separated, under provisions of MCO 1900.16, para 1005, which assumes that the servicemember has completed their period of enlistment, or fulfilled their service obligation. This provision says the following:

> 1. Commanders are authorized to discharge enlisted Marines upon expiration of enlistment, extension of enlistment, or period of induction. The expiration of enlistment for any of the above is the date of the month

immediately preceding the appropriate anniversary of the date of enlistment as adjusted for any time lost. Refer to subparagraph 1007.7c for additional guidance regarding the date of separation should this date fall on a Saturday, Sunday, or holiday.

2. Marines who elect to reenlist within 90 days before their expiration of active service are afforded the same benefits as though they were discharged at their EAS except as stated in reference (k) MCO 7220.24N, Selective Reenlistment Bonus (SRB/ESR) Program. The reason for discharge will be expiration of enlistment.

3. Except for reenlistment or when discharge is otherwise directed by competent authority, enlisted Marines who have not completed the military service obligation prescribed in reference (a) Title, 10 U.S.C. 651, will not be discharged upon expiration of enlistment. They will be released from active duty and transferred to the IRR. Marines separated before their expiration of enlistment will be transferred to the IRR subject to the guidance in paragraphs 6311.3 and 6401.5.

4. When a Reservist is released from extended active duty vice initial active duty for training and transferred to the Reserve component vice discharged (e.g., recruiter's aide assigned to temporary active duty), use MBK4 as the separation program designator (SPD) code. See appendix A for instructions on accessing SPD codes. Appx673.

This contradicts the BCNR's finding that the Plaintiff was not separated, he was instead released from active duty. A release from active duty is by definition, a separation, along with transfer from active duty to the IRR. Mr. Johnson was separated, under provisions of MCO 1900.16, para 1005, which assumes that the servicemember has completed their period of enlistment, or fulfilled their service obligation. Appx99. If Mr. Johnson was released, it would have been when his enlistment had expired. As his contract was changed, he was discharged and

entitled to notice and separation notification procedures under chapter 6 of the MARCORSEPMAN.

The BCNR's findings was that Mr. Johnson had completed his active duty and, as a Reservist, was being released from a period of activation or active duty, and transferred to the IRR under provision 4 of para 1005. Provision 4 is relevant to Reserve marines on extended active duty orders but Mr. Johnson was member of the Active Reserve Support to the Marine Corps, which is an entirely different component.

The trial court on the other hand, found that Mr. Johnson was correctly separated under para 1005, provision 3. Separation to the IRR under provision 3 would trigger specific notification safeguards under MCO 1900.16, para 6311.3a prior to a marine to the IRR.

Mr. Johnson had over two years left on his enlistment contract when he was separated. He reenlisted into the Approved Component Code of "B1," which is the Active Reserve Support to the Marine Corps. Appx93. He enlisted for a period of 48 months, which was approved on October 28, 2011. Appx93. The reference listed in the reenlistment contract is MCO P1040R.35B, which is the Reserve Career Planning and Retention Manual. Appx373. Chapter 5 discusses reenlistment and extension of enlistment.

Chapter 5 paragraph 1.a. states the following, "Reenlistment involves the execution of an entirely new contract between the applicant and the Marine Corps. This contract establishes a legal agreement between the United States Government and the enlisted member. A reenlistment contract replaces either a current enlistment/reenlistment contract, or one that has been terminated by separation." Appx627. The agreement was signed October 2011, which would put Mr. Johnson into an enlistment contract with the Active Reserve Support until October 2015.

As Mr. Johnson was under contract for 48 months, he had a legal agreement with the Marine Corps. Further, he was separated, according to definition in the MARCORSEPMAN, and received a negative reentry code. It follows that he should have received a separation board, rather being separated by a page 11 entry that did not state or address him being separated earlier than his contracted end of active service with the Active Reserve Support.

Mr. Johnson had found another Marine to swap orders with him while he dealt with his financial hardship at home. Appx138. However, the Marine Corp denied his request to swap. Had he been able to present this to a separation board, he might have had a different result than what he received.

As Mr. Johnson's enlistment contract was changed and he was separated from active duty prior to his contracted EAS date, his separation was involuntary. As a result, the notification procedures of MCO 1900.16, paragraph 6303 should

have been followed. The Board said these procedures were not required because Mr. Johnson was not "separated," but also because there was a MARADMIN that took authoritative precedence over the MARCORSEPMAN. Appx532.

The Board said specifically, "Relying on the AO's discussion of the AR Program, the Board concurred that MARADMIN 552/12 applied in your case. Specifically, the Board noted the language from MARADMIN 552/12, which provided that 'Career Designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code.'" Appx533. The Board stated that Marines are obligated to follow orders, regardless of whether they existed at the time of enlistment. The Board also stated that MCO 1001.52J discusses the need for adjustments to properly shape the AR enlisted inventory and states the adjustments will be made via a MARADMIN. Appx533. However, the Board does not specifically cite a paragraph where this pertains to the facts relevant in Mr. Johnson's case. Appx553. As the Board failed to ensure that procedural safeguards were followed, relying on written notification instead of a separation board, its actions are arbitrary and capricious and should be set aside.

The only uses of MARADMIN in MCO 1001.52J relate specifically to Officer Accessions, announcing instructions for Officer career designation boards, adjusting date of rank, and lastly, terms limits on how long Marines can serve in

specific ranks. Appx584-622. There is nothing giving MARADMINs the authority to separate Marines early, as was done via MARADMIN 552/12.

Mr. Johnson does not dispute the validity of MARADMIN 552/12, just its applicability to his situation. As his contracted end of service date was changed, he was not separated for a completion of service, and was instead involuntarily transferred/separated/released to the IRR. It does not matter what label you put on it, it was an action that should have triggered a separation board.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Mr. Johnson respectfully requests that this Court reverse the decision of the trial court and remand to the trial court with instructions to enter judgment in favor of Mr. Johnson.

Respectfully submitted,

WILLIAM E. CASSARA, Esquire
918 Hunting Horn Way
Evans, GA 30809
Tel: (706)-860-5769
Fax: (706) 868-5022
Email: bill@courtmartial.com

Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on 27 April 2022 a copy of the foregoing BRIEF OF PLAINTIFF-APPELLANT was filed electronically. This filing was served electronically to all parties by operation of the Court's electronic filing system.

s/ William E. Cassara

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), this brief contains 3,209 words, as calculated by Microsoft Word, the word processing software used to prepare this brief, using a 14-point proportionally spaced typeface and type style pursuant to Fed. R. App. P. 32(a)(5) & (6).

s/ William E. Cassara