**No. 22-1399**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**CRAIG JOHNSON, JR,**
**Plaintiff-Appellant,**

**v.**

**UNITED STATES,**
**Defendant-Appellee**

---

**APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN NO. 19-904C, JUDGE ZACHARY N. SOMERS**

---

**CORRECTED BRIEF FOR MR. CRAIG JOHNSON, JR.**

**WILLIAM E. CASSARA, ESQ.**
**WILLIAM E. CASSARA P.C.**
**918 Hunting Horn Way**
**Evans, GA 30809**
**Tel: (706)-860-5769**
**Fax: (706) 868-5022**
**Email: bill@courtmartial.com**

**Attorney for Plaintiff-Appellant**

Case: 22-1399 Document: 13 Page: 1 Filed: 01/31/2022

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1399

**Short Case Caption** Johnson v. US

**Filing Party/Entity** Craig Johnson, Jr.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 1/31/2022

Signature:

Name: William E. Cassara, Esq.

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Craig Johnson, Jr. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........ ii

STATEMENT OF RELATED CASES ........ iii

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 2

I. NATURE OF THE CASE AND PROCEEDINGS BELOW ........ 2

II. STATEMENT OF THE FACTS ........ 3

A. Procedural History ........ 6

B. BCNR Remand ........ 7

C. Trial Court Proceedings ........ 7

SUMMARY OF THE ARGUMENT ........ 8

ARGUMENT ........ 8

I. STANDARD OF REVIEW ........ 8

II. THE BNCR'S ACTIONS WERE ARBITRARY, CAPRICIOUS, CONTRARY TO LAW, AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE SET ASIDE ........ 9

CONCLUSION AND REQUEST FOR RELIEF ........ 15

# TABLE OF AUTHORITIES

## CASES

*Barnes v. United States*, 473 F.3d 1356 (Fed. Cir. 2007) .................................. 8, 9

*Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005) .................................... 9

*Heisig v. United States*, 719 F.2d 1153 (Fed. Cir. 1983) ....................................... 9

*Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005) .................................. 9

## STATUTES

28 U.S.C. § 1295(a)(3) ........................................................................................ 1

28 U.S.C. § 1491 .................................................................................................. 1

37 U.S.C. § 204 ................................................................................................ 1, 2

## REGULATIONS

MCO 1001.52J ............................................................................................ 3, 14, 15

MCO 1900.16 ..................................................................................................9-13

MCO P1040R.35B ................................................................................................ 12

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, Mr. Johnson's counsel is unaware of any other appeals taken from the same proceedings before the United States Court of Federal Claims to this Court or any other appellate court. Also, counsel is unaware of any cases that will directly affect or be directly affected by this Court's decision in this appeal.

No. 22-1399

IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CRAIG JOHNSON, JR,
Plaintiff-Appellant,

v.

UNITED STATES,
Defendant-Appellee

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS
IN NO. 19-904C, JUDGE ZACHARY N. SOMERS

# BRIEF FOR MR. JOHNSON, JR.

## JURISDICTIONAL STATEMENT

The United States Court of Federal Claims possessed jurisdiction over the complaint based on the Tucker Act, 28 U.S.C. § 1491, and the Military Pay Act, 37 U.S.C. § 204, a money-mandating statute. This Court possesses jurisdiction under 28 U.S.C. § 1295(a)(3) because Mr. Johnson, Jr. appealed the October 28, 2021, final judgment of the United States Court of Federal Claims to this Court within 60 days of his filing a motion to alter or amend the factual findings under Rule 52(b), which was denied on December 9, 2021. Appx11.

## STATEMENT OF THE ISSUES

The United States Marine Corps separated appellant early and without separation proceedings as a result of his failure to execute PCS orders. Mr. Johnson was denied notice and opportunity to a separation board before being separated with a stigmatizing reentry code that prevented his promotion to Warrant Officer. The Board for Correction of Naval Records (BCNR) rejected Mr. Johnson requests to correct his military records. The trial court remanded the BCNR to again consider Mr. Johnson's request, and they declined to change their opinion. The Court of Federal Claims held that the BCNR's decision was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Did the trial court err?

## STATEMENT OF THE CASE

### I. NATURE OF THE CASE AND PROCEEDINGS BELOW

Mr. Johnson appeals from *Johnson v. United States*, No. 19-904 C (2019), Appx1-12. Mr. Johnson brought suit at the Court of Federal Claims under the Military Pay Act, 37 U.S.C. § 204, challenging the BCNR's decision denying his request to correct his records and for military backpay. Appx18. The trial court concluded that Mr. Johnson failed to meet the burden of presenting cogent and clearly convincing evidence that the BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Appx1-12. The trial

court granted the United States' Motion for Judgment on the Administrative Record and denied Mr. Johnson's Cross-Motion for the same. Appx1-12.

## II. STATEMENT OF THE FACTS

Mr. Johnson, a United States Marine, served honorably on active duty in the Marine Corps for over ten years and over seven years in the Select Marine Corps Reserve. He entered active duty on 31 May 2006. He was trained in and served primarily as an Administrative Specialist. Appx19.

On 13 April 1999, appellant enlisted in the U.S. Marine Corps Reserve (USMCR) for eight years, and on 12 May 2006, he extended his enlistment for 23 months to affiliate with the Active Reserve (AR) Program. Appx528. On 25 November 2008, he reenlisted in the USMCR for three years, receiving an enlistment bonus. Appx529. On 10 November 2011, the appellant reenlisted in the USMCR for 48 months, which included a one-year extension to accept active-duty orders. In doing so, he became a "Career Designated Marine," a Marine who, as defined in MCO 1001.52J, has "successfully reenlisted for a second tour in the AR Program." Appx529.

On 17 March 2013, Mr. Johnson was issued permanent change of station (PCS) orders from Virginia Beach, Virginia, to Phoenix, Arizona, to serve as a prior-service recruiter for 36 months. Appx529. His report date was 9 June 2013,

which would have resulted in a period of 29 months on station prior to his scheduled end of active service (EAS) date of 9 November 2015. Appx529.

While attending the PSR training course, Mr. Johnson sought a stationing option closer to his family in Virginia Beach after some family matters. Appx529. In the weeks following, he reached out to Master Sergeant (MSgt) Smith via email and visited in person to determine steps he could take to change his Phoenix, Arizona assignment to a location closer to his family. Appx529. Mr. Johnson found another recruiter who agreed to swap orders with him, but his official request to swap orders and locations was denied by authorities. He then requested an extension on his report date to facilitate the sale of his family home, but that request was also denied. Appx529.

On 11 June 2013, Mr. Johnson was provided an Administrative Remarks (Page 11) entry that stated he had been assigned a reenlistment eligibility code of RE-3O because he would not reenlist/extend to comply with PCS orders. Appx529. The Page 11 entry further stated that, with this code, he "would not reenlist/extend to comply with PCS orders. Appx529. In addition, it stated he "would not be eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs or involuntary separation pay" unless specifically authorized by the Commandant of the Marine Corp (CMC). Appx529. Citing Marine Administrative Message (MARADMIN) 552/12, MSgt Smith coordinated

Mr. Johnson's release date from the AR program to reflect 30 June 2013. Appx529.

On 30 June 2013, Mr. Johnson was separated from the active status to the Individual Ready Reserve (IRR) and issued a Certificate of Release or Discharge from Active Duty (DD 214). Appx529. His DD Form 214 indicated he was "transferred to the FMCR" but was later corrected on 11 July 2013 by a Correction to DD Form 214 (DD Form 215) to reflect he was "transferred to the IRR." Appx529.

On 23 September 2013, Mr. Johnson was mobilized from the IRR to active duty and stationed in Quantico, VA. Appx529. On 13 December 2013, he was preliminarily approved by the Secretary of the Navy (SECNAV) for appointment to warrant officer, with an appointment date of 1 February 2014. Appx529-530. However, on 14 January 2014, he was notified that his promotion was delayed due to his previous assignment of a RE-3O reenlistment code. Appx530.

On 30 June 2016, Commander, Marine Corps Systems Command, notified Mr. Johnson that he was recommending his name be retained on the FY14 Warrant Officer Selection List and the RE-3O reenlistment code be removed from his record. Appx530. Additionally, he was advised of the opportunity to submit a written statement to the SECNAV via his chain of command. Appx530. On the same date, Mr. Johnson made a request to the SECNAV to remove the RE-3O

reenlistment code and remove the delay of appointment to warrant officer. Appx530.

On 24 September 2016, he completed his mobilization orders and was provided a DD Form 214. Appx530. On 13 December 2016, the Deputy Commandant (Manpower & Reserve Affairs) (DC (M&RA)) responded, informing Mr. Johnson that "before action can be taken on subject request, you must first petition the Board for Correction of Naval Records to request removal of your reentry code of RE-3O." Appx530. DC (M&RA) further stated the Board would "examine your record and any evidence submitted and then forward its recommendation to the SECNAV." Appx530.

## A. **Procedural History**

On 18 January 2017, Mr. Johnson petitioned the BCNR to remove the assigned RE-3O reentry code and grant his appointment to warrant officer. Appx44. His case, docket number NR20170000419, was considered by the Board and denied. Appx45. On 3 November 2017, he requested the Board reconsider its earlier denial. This second appeal was denied on 27 September 2018. Appx47-48.

On 20 June 2019, Mr. Johnson filed suit in the Court of Federal Claims, alleging wrongful discharge and denial of military pay. Appx 18-27. On 2 November 2019, the court granted an unopposed motion to remand the case to the Board for Correction of Naval Records. Appx520.

### B. BCNR Remand

On 29 July 2020, BCNR issued their decision on remand. Appx528. The Board found that Mr. Johnson was not separated from service, but instead he was transferred to the IRR, which does not constitute a separation or discharge which would trigger separation due process protections. Appx528. The specific findings of the Board were as follows: the Board finds that you were not discharged from the service, and thus your contended procedural requirements of the MARCORSEPMAN did not apply. Your enlistment was an agreement to participate in the USMCR, and your transfer to a subcomponent of same (the IRR) was within the purview of your enlistment contract. Finally, you elected to participate in the AR Program, subject to its additional requirements for Reservists, and your election to refuse orders subjected you to the consequences detailed in the MARADMIN for same: an accelerated EAS and RE-3O reenlistment code noting your refusal of orders. Appx528.

### C. Court Opinion

After the BCNR issued their decision, both parties filed their motions for judgment on the administrative record. Appx624, Appx630. The Court ordered oral argument on the motions, which took place on 4 May 2020. Appx725-726. After the oral argument, the Court ordered additional briefings. Appx751, Appx759. Finally, on 28 October 2021, the Court ordered its final Opinion and

Order. Appx1. The Court found that Plaintiff was properly separated and transferred to the IRR pursuant to authority provided in MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, none of which required a separation board or greater notice than the page 11 entry that Plaintiff signed. Appx1. On 24 November 2021, Plaintiff filed a motion to alter or amend judgment. Appx771. The Court of Claims denied the motion for reconsideration on 9 December 2021. Appx11.

## SUMMARY OF THE ARGUMENT

Mr. Johnson was denied notice and opportunity to a separation board before being separated with a stigmatizing reentry code that prevented his promotion to Warrant Officer. The Board for Correction of Naval Records (BCNR) rejected Mr. Johnson requests to correct his military records. The trial court, in granting the Government's motion for judgment on the administrative record, affirming that the BCNR's decision was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews the trial court's decision granting or denying a motion for judgment on the administrative record without deference. *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007). This Court "will not disturb the

decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Id.* (internal quotations omitted). A decision granting or denying a motion for judgment upon the administrative record is reviewed without deference. We apply the same standard of review as the United States Court of Federal Claims, which means "we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). The trial court's legal conclusions will not be reversed unless incorrect as a matter of law, and its factual findings will not be disturbed unless clearly erroneous. *Heisig v. United States*, 719 F.2d 1153, 1158 (Fed. Cir. 1983). Statutory or regulatory interpretation, however, is reviewed without deference. *Strickland v. United States*, 423 F.3d 1335, 1337 (Fed. Cir. 2005). *Barnes v. United States, 473 F.3d 1356, 1361 (Fed. Cir. 2007)*

## II. THE BCNR'S ACTIONS WERE ARBITRARY, CAPRICIOUS, CONTRARY TO LAW, AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE SET ASIDE.

The BCNR, on remand, made the finding that the Plaintiff was not "separated" from the Marine Corps, but instead "released from a period of active duty service." Appx550. The Board relies on the MARCORSEPMAN (Marine Corps Order (MCO) 1900.16) to support their position that Plaintiff was not separated from active duty, but instead transferred to the IRR. Appx550.

The Board said as follows:

> At the outset, the record must be corrected that you were not "separated" from the Marine Corps such that you were terminated from employment. Per the MARCORSEPMAN, Reservists in the AR Program are issued a DD Form 214 when released from a period of active duty service. These DD Form 214 termination of active duty documents are not separation documents that would fall under the purview of the MARCORSEPMAN chapter regarding total separation (or firing) from service, but instead note the completion of required active service. Additionally, the Board noted that in your contention, you incorrectly stated "separation to the FMCR" because the DD Form 215 issued on 11 July 2013 corrected your DD Form 214 to read "transferred to the IRR." Appx550.

However, as stated in appellant's brief in the lower court, the definition of "Separation" in the MARCORSEPMAN, para. 1002(50) is as follows:

> A general term which includes discharge, dismissal, dropping from the rolls, revocation of an appointment or commission, termination of an appointment, *release from active duty*, release from custody and control of the Marine Corps, or *transfer from active duty to the: IRR*, Fleet Marine Corps Reserve, Retired List, Temporary or Permanent Disability Retired List, or Retired Reserve and similar changes in an active or reserve status. Appx665.

This contradicts the BCNR's finding that the Plaintiff was not separated, he was instead "released" from active duty, as these exact exactions fall under the definition and specific examples of what entitles a separation. Mr. Johnson was separated, under provisions of MCO 1900.16, para 1005, which assumes that the servicemember has completed their period of enlistment, or fulfilled their service obligation. This provision says the following:

1. Commanders are authorized to discharge enlisted Marines upon expiration of enlistment, extension of enlistment, or period of induction. The expiration of enlistment for any of the above is the date of the month

immediately preceding the appropriate anniversary of the date of enlistment as adjusted for any time lost. Refer to subparagraph 1007.7c for additional guidance regarding the date of separation should this date fall on a Saturday, Sunday, or holiday.

2. Marines who elect to reenlist within 90 days before their expiration of active service are afforded the same benefits as though they were discharged at their EAS except as stated in reference (k) MCO 7220.24N, Selective Reenlistment Bonus (SRB/ESR) Program. The reason for discharge will be expiration of enlistment.

3. Except for reenlistment or when discharge is otherwise directed by competent authority, enlisted Marines who have not completed the military service obligation prescribed in reference (a) Title, 10 U.S.C. 651, will not be discharged upon expiration of enlistment. They will be released from active duty and transferred to the IRR. Marines separated before their expiration of enlistment will be transferred to the IRR subject to the guidance in paragraphs 6311.3 and 6401.5.

4. When a Reservist is released from extended active duty vice initial active duty for training and transferred to the Reserve component vice discharged (e.g., recruiter's aide assigned to temporary active duty), use MBK4 as the separation program designator (SPD) code. See appendix A for instructions on accessing SPD codes. Appx673.

This contradicts the BCNR's finding that the Plaintiff was not separated, he was instead released from active duty. A release from active duty is by definition, a separation, along with transfer from active duty to the IRR. Mr. Johnson was separated, under provisions of MCO 1900.16, para 1005, which assumes that the servicemember has completed their period of enlistment, or fulfilled their service obligation. Appx99. If Mr. Johnson was released, it would have been when his enlistment had expired. As his contract was changed, he was discharged and

entitled to notice and separation notification procedures under chapter 6 of the MARCORSEPMAN.

The BCNR's findings was that Mr. Johnson had completed his active duty and, as a Reservist, was being released from a period of activation or active duty, and transferred to the IRR under provision 4 of para 1005. Provision 4 is relevant to Reserve marines on extended active duty orders but Mr. Johnson was member of the Active Reserve Support to the Marine Corps, which is an entirely different component.

The trial court on the other hand, found that Mr. Johnson was correctly separated under para 1005, provision 3. Separation to the IRR under provision 3 would trigger specific notification safeguards under MCO 1900.16, para 6311.3a prior to a marine to the IRR.

Mr. Johnson had over two years left on his enlistment contract when he was separated. He reenlisted into the Approved Component Code of "B1," which is the Active Reserve Support to the Marine Corps. Appx93. He enlisted for a period of 48 months, which was approved on October 28, 2011. Appx93. The reference listed in the reenlistment contract is MCO P1040R.35B, which is the Reserve Career Planning and Retention Manual. Appx373. Chapter 5 discusses reenlistment and extension of enlistment.

Chapter 5 paragraph 1.a. states the following, "Reenlistment involves the execution of an entirely new contract between the applicant and the Marine Corps. This contract establishes a legal agreement between the United States Government and the enlisted member. A reenlistment contract replaces either a current enlistment/reenlistment contract, or one that has been terminated by separation." Appx627. The agreement was signed October 2011, which would put Mr. Johnson into an enlistment contract with the Active Reserve Support until October 2015.

As Mr. Johnson was under contract for 48 months, he had a legal agreement with the Marine Corps. Further, he was separated, according to definition in the MARCORSEPMAN, and received a negative reentry code. It follows that he should have received a separation board, rather being separated by a page 11 entry that did not state or address him being separated earlier than his contracted end of active service with the Active Reserve Support.

Mr. Johnson had found another Marine to swap orders with him while he dealt with his financial hardship at home. Appx138. However, the Marine Corp denied his request to swap. Had he been able to present this to a separation board, he might have had a different result than what he received.

As Mr. Johnson's enlistment contract was changed and he was separated from active duty prior to his contracted EAS date, his separation was involuntary. As a result, the notification procedures of MCO 1900.16, paragraph 6303 should

have been followed. The Board said these procedures were not required because Mr. Johnson was not "separated," but also because there was a MARADMIN that took authoritative precedence over the MARCORSEPMAN. Appx532.

The Board said specifically, "Relying on the AO's discussion of the AR Program, the Board concurred that MARADMIN 552/12 applied in your case. Specifically, the Board noted the language from MARADMIN 552/12, which provided that 'Career Designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code.'" Appx533. The Board stated that Marines are obligated to follow orders, regardless of whether they existed at the time of enlistment. The Board also stated that MCO 1001.52J discusses the need for adjustments to properly shape the AR enlisted inventory and states the adjustments will be made via a MARADMIN. Appx533. However, the Board does not specifically cite a paragraph where this pertains to the facts relevant in Mr. Johnson's case. Appx553. As the Board failed to ensure that procedural safeguards were followed, relying on written notification instead of a separation board, its actions are arbitrary and capricious and should be set aside.

The only uses of MARADMIN in MCO 1001.52J relate specifically to Officer Accessions, announcing instructions for Officer career designation boards, adjusting date of rank, and lastly, terms limits on how long Marines can serve in

specific ranks. Appx584-622. There is nothing giving MARADMINs the authority to separate Marines early, as was done via MARADMIN 552/12.

Mr. Johnson does not dispute the validity of MARADMIN 552/12, just its applicability to assign the RE-30 code in situations other than Marines with approved humanitarian transfer request, as stated in MCO 1001.52J. As his contracted end of service date was changed, he was not separated for a completion of service, and was instead involuntarily transferred/separated/released to the IRR. It does not matter what label you put on it, it was an action that should have triggered a separation board.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Mr. Johnson respectfully requests that this Court reverse the decision of the trial court and remand to the trial court with instructions to enter judgment in favor of Mr. Johnson.

Respectfully submitted,

/s/ William E. Cassara
WILLIAM E. CASSARA, Esquire
918 Hunting Horn Way
Evans, GA 30809
Tel: (706)-860-5769
Fax: (706) 868-5022
Email: bill@courtmartial.com

Attorney for Plaintiff-Appellant

# ADDENDUM

## TABLE OF CONTENTS

**Appendix Page**

Opinion and Order of
The Honorable Zachary N. Somers
filed October 28, 2021 ........................................................................Appx001

Judgment
filed October 29, 2021 ........................................................................Appx010

Order of
The Honorable Zachary N. Somers
Re: Denying Plaintiff's Motion for Reconsideration
filed December 9, 2021 ......................................................................Appx011

# In the United States Court of Federal Claims

No. 19-904 C
(Filed: October 28, 2021)

* * * * * * * * * * * * * * * * * * * *

**CRAIG JOHNSON, JR.,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * * *

*William E. Cassara*, William E. Cassara P.C., of Evans, GA, for Plaintiff.

*Richard P. Schroeder*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

Plaintiff, Craig Johnson, Jr., filed a complaint before this Court to challenge the Board for Correction of Naval Records' ("Board") denial of his application to correct his military record. While a member of the Active Reserve ("AR") of the United States Marine Corps ("USMC"), Plaintiff failed to comply with orders to relocate to a new duty station. Plaintiff's refusal to execute his orders resulted in his transfer out of the AR Program to the Individual Ready Reserve ("IRR") and the entry of a reenlistment code that prevented his promotion to warrant officer. In his complaint, Plaintiff alleges he was entitled to notice and a separation board prior to his transfer to the IRR and the entry of the reenlistment code. On remand, the Board rejected Plaintiff's arguments regarding his entitlement to additional notice and a separation board and his request to remove the reenlistment code from his record. Before the Court are the parties' cross-motions for judgment on the administrative record. ECF Nos. 33, 39. For the following reasons, the Court has determined that the Board's decision was not arbitrary, capricious, or an abuse of discretion and was in accordance with applicable law.

## BACKGROUND

### A. Factual History

Plaintiff enlisted in the U.S. Marine Corps Reserve ("USMCR") on April 13, 1999. AR 469. He joined the USMCR AR Program on May 12, 2006, and he reenlisted in the AR Program on November 25, 2008, for three years. *Id.* at 469-70. Unlike other reservists, those in the AR Program operate on a full-time basis to support the various functions of the USMCR. *Id.* at 470; Marine Corps Order ("MCO") 1001.52J. AR Program Marines can be employed in: "(1) organizing, preparing and administering policies and regulations affecting the USMCR; (2) training and instructing the USMCR; (3) recruiting and retention for the USMCR; [and] (4) administration of the USMCR personnel." MCO 1001.52J.

On November 10, 2011, Plaintiff again reenlisted in the AR Program, this time for 48 months. AR 470. Because he "successfully reenlisted for a second tour in the AR Program," Plaintiff became a "Career Designated Marine" as defined under MCO 1001.52J. AR 470. During this enlistment, Plaintiff was issued permanent change of station ("PCS") orders on March 17, 2013, to relocate from Virginia Beach, Virginia, to Phoenix, Arizona, to serve as a recruiter for 36 months. His report date was June 9, 2013, which meant that he would have only served in this assignment for 29 months before his scheduled end of active service ("EAS") date of November 9, 2015. *Id.* However,

> [c]areer enlisted Marines in receipt of PCSO's issued by the CMC [Commandant of the Marine Corps] who do not have sufficient obligated service to complete the prescribed tour will be immediately afforded the opportunity to extend/reenlist in order to have the required active service. When Marines state that they do not desire to extend/reenlist, the CMC (MMEA) will be promptly notified, i.e., within 10 days of the date the orders are received at the command reporting unit level. Career enlisted Marines who do not extend/reenlist in order to qualify for assignment will sign the following page 11 SRB entry.

MCO P1300.8R ¶ 1102.

Because Plaintiff believed that he would have difficulty selling his house in the Virginia Beach area,[1] he unsuccessfully attempted to have his orders changed so that he could be posted closer to Virginia Beach to manage this potential "financial hardship." ECF No. 1 ("Compl.") ¶ 7; AR 470. Before his PCS began, Plaintiff's superiors denied his attempts to switch orders with colleagues or obtain an extension at his current duty station. Compl. ¶ 7; AR 470. After these failed attempts to avoid his PCS, Plaintiff refused his orders to relocate. AR 470.

As memorialized in a June 10, 2013, email from his Sergeant Major to his Master Sergeant, Plaintiff was apprised of the consequences of declining to execute his PCS orders and was counseled to reconsider. *Id.* The pertinent section of the email reads:

---

[1] According to Plaintiff, he learned that his "neighbors in Virginia Beach were having to 'short-sell' their home, which would immediately impact the anticipated sale value of [his] home." AR 470.

> SSgt Johnson has elected not to execute his orders. I have spoken to him and he knows the outcome of his decision. . . . He [sic] reasoning is that it would create a hardship for his family. I have tried to get him to use sound judgment in his decision making, but unfortunately he came to this conclusion.

AR 99.

As a result of failing to execute his PCS orders, on June 30, 2013, Plaintiff was transferred from the AR Program to the IRR and issued an RE-3O code regarding his reenlistment eligibility under the authority of Marine Corps Separation Manual ("MARCORSEPMAN") 1005 ¶ 3 and Marine Administrative Message ("MARADMIN") 552/12. AR 62; AR 470. As a result of the assignment of this code, Plaintiff signed an "administrative remark" in his service record referred to as a "page 11 entry" that expressly states that "I have been advised that Marines assigned this code are not eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs or involuntary separation pay unless specifically authorized by the [Commandant of the Marine Corps]." AR 45. Roughly three months later, on September 23, 2013, Plaintiff was mobilized to the AR Program from the IRR and stationed in Quantico, Virginia. He was preliminarily approved for appointment to warrant officer on December 13, 2013. AR 470-71. However, on January 14, 2014, Plaintiff was informed his appointment would be delayed due to the RE-3O code in his record. AR 471.

**B. Procedural History**

On June 30, 2016, Plaintiff wrote to the Secretary of the Navy requesting removal of the RE-3O code. AR 91-92. After being informed that he needed to apply initially to the Board to remove the RE-3O code from his record, Plaintiff petitioned the Board on January 18, 2017. AR 80. The Board denied Plaintiff's petition, and he filed an appeal on November 3, 2017, asking the Board to reconsider its earlier denial. AR 7-8, 26. This appeal was denied on September 27, 2018. AR 10-11. Therefore, on June 20, 2019, Plaintiff filed a complaint in this Court. In his complaint, Plaintiff asserts that the USMC "has failed to pay Plaintiff the pay and allowances that he is entitled to receive, under 37 U.S.C. §204, as a result of his wrongful separation in violation of the Marine Corp Orders and Regulations providing for notice and an opportunity for separation board before separation." Compl. ¶ 24.

On November 2, 2019, the Court remanded the case to the Board for further review. ECF No. 13. On remand, the Board again denied Plaintiff's request to have his RE-3O code removed. The Board determined that "it was not error or injustice for the Marine Corps to follow the requirements of MARADMIN 552/12 and release [Plaintiff] from the AR Program at the effective date of the orders and assign [Plaintiff] an RE-3O reenlistment code after [he] refused to execute [his] PCS orders to Phoenix, Arizona." AR 478. According to the Board, because Plaintiff

> elected to participate in the AR Program, subject to its additional requirements for Reservists, . . . [his] election to refuse orders subjected [him] to the consequences detailed in the MARADMIN for same: an accelerated EAS and RE-3O

> reenlistment code noting [his] refusal of orders. Although not required, the Board found that the Page 11 entry and discussion with [his] senior enlisted member constituted appropriate notice and counseling, where none was formally required, for the results of [his] election to refuse PCS orders.

*Id*. Moreover, the Board noted that because Plaintiff was a Career Designated Marine in the AR Program whose specialty was as an Administrative Specialist, he was required to "strive to become the expert on [Reserve Component] issues and advise other Marines unfamiliar with the AR Program on current policies and responsibilities" and thus should have been acutely aware of the consequences of his actions in refusing his PCS orders. AR 472 (quoting MCO 1001.52J) (internal quotation marks omitted). Finally, the Board concluded that there was

> insufficient evidence of an error or injustice in the Page 11 counseling or the issued PCS orders, based on the emails confirming [Plaintiff's] understanding of said consequences, paperwork that was completed, and [his] familiarity with administrative affairs per [his] specialty, . . . [to] overcome the presumption of regularity that [he was] informed that [his] refusal of orders would result in being released from the AR program at the effective date of the orders.

AR 478.

## DISCUSSION

### A. Legal Standard

The Court may grant a motion for judgment on the administrative record if it determines that a party has met its burden of proof based on the evidence in the record in light of the disputed and undisputed facts. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005); *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006). In considering a motion for judgment on the administrative record in a military pay case, the Court "will not disturb the decision of [a corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted). Furthermore, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

The Court may set aside a corrections board's decision if a plaintiff can demonstrate "by cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the corrections board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). However, "[w]hen substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). The Court's review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

**B. Analysis**

Plaintiff claims that the USMC has failed to provide "the pay and allowances that he is entitled to receive, under 37 U.S.C. §204, as a result of his wrongful separation in violation of the Marine Corp Orders and Regulations providing for notice and an opportunity for separation board before separation," and that the Board's decision not to correct this alleged error is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Compl. ¶ 24. Therefore, in order to prevail in this case and overturn the Board's decision not to correct his military record, Plaintiff must identify some authority that entitled him to a separation board and greater notice than he was accorded by the Marine Corps prior to his separation and transfer to the IRR. For the reasons explained below, as the Board correctly determined, Plaintiff has failed to identify any applicable provision that entitled him to either a separation board or greater notice than he received prior to his separation and transfer to the IRR.

**1. The Board Correctly Found that Plaintiff was Properly Separated and Transferred to the IRR.**

At the time Plaintiff refused his PCS orders, he was a "Career Designated Marine." AR 470. Importantly, MARADMIN 552/12 provides that "Career Designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR Program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O enlistment code." AR 24. As the Board correctly observed, this is exactly what happened when Plaintiff refused his PCS orders: he was released from the AR Program with an RE-3O code. AR 474. This is consistent with the MARCORSEPMAN, which provides that,

> [e]xcept for reenlistment or when discharge is otherwise directed by competent authority, enlisted Marines who have not completed the military service obligation prescribed in 10 U.S.C. 651, will not be discharged upon expiration of enlistment. They will be released from active duty and transferred to the IRR. *Marines separated before their expiration of enlistment will be transferred to the IRR subject to the guidance in paragraphs 6311.3 and 6401.5.*[2]

MARCORSEPMAN 1005 ¶ 3 (emphasis added).

Marine Corps Order P1300.8R ¶ 1102 sheds additional light on the authority for Plaintiff's separation. According to that order, career enlisted Marines, like Plaintiff, who receive PCS orders that extend beyond their then-current end of active service date have an

---

[2] Paragraphs 6331.3 and 6401.5 address when transfer to the IRR is appropriate versus, for example, discharge from the Marines.

Case 1:19-cv-00904-DNS   Document 34   Filed 10/28/21   Page 6 of 9

option: either "extend/reenlist in order to have the required active service," or, if they do not desire to "extend/reenlist in order to qualify for assignment[,] [they must] sign [a] page 11 SRB entry." MCO P1300.8R ¶ 1102. The applicable page 11 entry states that:

> I have been assigned reenlistment eligibility code RE-3O. Reason: I will not reenlist/extend to comply with PCS orders. I have been advised that Marines assigned this code are not eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs, or involuntary separation pay unless specifically authorized by the CMC (MMEA). I have been given the opportunity to submit a statement and that statement, if submitted, will be filed on the document side of my SRB. I choose to/not to submit a statement.

AR 20. Plaintiff signed this page 11 entry on June 11, 2013. *Id.*

In sum, as the Board correctly determined, Plaintiff was properly separated and transferred to the IRR pursuant to authority provided in MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, none of which require a separation board or greater notice than the page 11 entry that Plaintiff signed.[3]

**2. The Orders and Policies Plaintiff Relies on are Inapplicable to His Case.**

Despite the above cited authorities, which clearly set forth the ramifications and procedures followed in cases in which a Career Designated Marine refuses to follow PCS orders, Plaintiff nonetheless offers several unavailing arguments as to why he was entitled to notice and a separation board prior to his separation and transfer to the IRR. First, Plaintiff incorrectly relies on chapter 6 of the MARCORSEPMAN, which under certain circumstances provides for written notice requirements and a right to a separation board for Marines separated before the end of their enlistment periods. Plaintiff argues that because he had "over two years left on his enlistment contract" before being transferred to the IRR, the USMC was required to follow the procedures and instructions contained in chapter 6. ECF No. 33 at 4. There are at least two fundamental problems with Plaintiff's argument. First, the procedures and instructions for administrative separations contained in chapter 6 of the MARCORSEPMAN do not apply to Plaintiff's separation and transfer to the IRR, because the reason for Plaintiff's separation and transfer is not covered by chapter 6. *See* MARCORSEPMAN 6201 *et seq*. (listing the reasons covered by chapter 6 that permit a commander to recommend involuntary separation of a Marine before the expiration of the Marine's current contract).

Second, Plaintiff fails to heed the opening paragraph of chapter 6, which states that

> [t]he procedures and instructions in this chapter pertain to the administrative separation of Marines before completion of active or obligated service. *Unless*

[3] Although not required by Marine Corps orders or regulations, Plaintiff also received counseling on the ramifications of his decision from his direct superior. AR 99 ("SSgt Johnson has elected not to execute his orders. I have spoken to him and he knows the outcome of his decision. . . . He [sic] reasoning is that it would create a hardship for his family. I have tried to get him to use sound judgment in his decision making, but unfortunately he came to this conclusion.").

> *specifically authorized by separate order*, only the reasons contained in this chapter may form the basis for a Marine's separation, whether voluntary or involuntary.

MARCORSEPMAN 6001 (emphasis added). In other words, the chapter 6 procedures and instructions Plaintiff claims entitle him to notice and a separation board prior to his administrative separation are superseded when "specifically authorized by separate order." *Id.* As the Board correctly determined, a separate order did apply to Plaintiff's circumstances, MCO 1001.52J, and, therefore, the procedures and instructions in chapter 6 of the MARCORSEPMAN were superseded and inapplicable to Plaintiff's separation. AR 477. Rather, MCO 1001.52J provides that adjustments to the AR Program will be made separately through the MARADMIN. MCO 1001.52J, 2-10 ¶ 11; *see* AR 474. MARADMIN 552/12 is the policy that applied to Plaintiff's circumstances, and, as discussed above, it provides that "Career Designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code." AR 24. Thus, under the authority of MARADMIN 552/12, Plaintiff's EAS date was properly shortened to June 30, 2013, and he was transferred to the IRR.

Plaintiff attempts to avoid the consequences of MARADMIN 552/12 by arguing that because it was not in existence at the time he reenlisted, it cannot supersede his enlistment contract. However, as the Board observed, "Marines are obligated by the Uniform Code of Military Justice to follow lawful orders, regardless of whether they existed at the time of enlistment," the provision in question "was a lawful order at the time [Plaintiff] refused [his] PCS orders to Phoenix," and Plaintiff's "command was obliged to follow MARADMIN 552/12." AR 474. Accordingly, MARADMIN 552/12 applied to Plaintiff even though it was promulgated after he reenlisted.

Moreover, despite Plaintiff not being entitled to the notice requirements specified in chapter 6 of MARCORSEPMAN, the Board determined that Plaintiff was nonetheless well aware of the consequences of disobeying his PCS orders. For instance, a June 10, 2013, email from his direct commander memorialized that Plaintiff was counseled on the consequences of refusing his PCS orders, "knows the outcome of his decision," was asked to reconsider rejecting the orders, and advised to use "sound judgment in [] decision making." AR 99. Moreover, the Board observed that

> as a Career Designated Marine in the AR Program, and especially noting [his Marine occupational specialty] and [his] rank, [Plaintiff was] not only required to be familiar with MARADMIN 552/12 and its ramifications on refusing orders, but [he was] also required to have knowledge in order to properly advise subordinates in the AR Program.

AR 476. Thus, even without notice, which the Board determined was not required, Plaintiff would have been cognizant of the ramifications of his refusal to follow PCS orders. The Board found his awareness of the ramifications of his actions was further evidenced by Plaintiff's "attempts to both swap orders with another individual, as well as to extend [his] enlistment at [his] then-duty station." *Id.*

Plaintiff's argument for why he was entitled to a separation board prior to his separation and transfer to the IRR fares no better than his argument regarding notice. As discussed above, the USMC policies and orders that govern Plaintiff's separation and transfer to the IRR do not require the provision of a separation board to Career Designated Marines who refuse to follow PCS orders. The closest that Plaintiff comes to demonstrating a requirement for a separation board is chapter 6 of the MARCORSEPMAN. But, as discussed above, his chapter 6 grounds fail because chapter 6 is specific regarding the circumstances for which a separation board is required. In fact, chapter 6 contains a table showing the circumstances that require a separation board, and Plaintiff's basis for separation—refusal to follow PCS orders—is not listed among those circumstances. *See* MARCORSEPMAN Table 6-2.

Plaintiff's arguments based on chapter 6 of the MARCORSEPMAN are not well taken. They would require the Court to engage in one of two flawed courses of action. On the one hand, Plaintiff's arguments would require the Court to insert into the specifically listed reasons a USMC commander may recommend involuntary separation of a Marine before the expiration the Marine's enlistment contract a whole new reason—refusal to follow PCS orders—and then further require the Court to decide which of the administrative rules for separating a Marine listed in chapter 6 the USMC is required to follow when separating a Marine under this new court-created reason for involuntary separation. This the Court cannot do. It is up to the USMC, not this Court, to determine the grounds for separating a Marine prior to the expiration of an enlistment contract. Once those rules are established, the Court may ensure that they are properly applied to the extent that their application is within this Court's Tucker Act jurisdiction. The Court cannot, however, establish the rules in the first instance.

On the other hand, Plaintiff would have this Court ignore MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102 to find that the only reasons for separating a Marine prior to the end of his or her enlistment contract are those listed in chapter 6 and that because refusal to follow PCS orders is not listed, Plaintiff should not have been separated and transferred to the IRR. Beyond requiring the Court to ignore established USMC policy and procedure, this seems to the Court to be an invitation to wreak havoc on the USMC. Despite having set forth clear policy on the ramifications and procedures to be followed in cases in which a Career Designated Marine in the AR Program refuses to follow PCS orders, Plaintiff would have the Court effectively disallow those policies, at least until chapter 6 of the MARCORSEPMAN could be amended. Again, this is not something the Court can or will do. MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102 set forth what happens when a Career Designated Marine in the AR Program refuses to follow PCS orders; as the Board correctly determined, they were followed here.

Finally, at oral argument, after Plaintiff's counsel averred that there was additional USMC authority not previously cited entitling Plaintiff to notice and a separation board, the Court gave Plaintiff an opportunity to submit that material through a supplemental brief. ECF No. 51. Based on the discussion of this brief during oral argument, the Court anticipated that the brief would provide USMC orders and policies that Plaintiff had not previously cited. However, rather than cite new USMC authorities that support the sole allegation of Plaintiff's complaint—that the Marine Corps failed to give him "the pay and allowances that he is entitled

to receive, under 37 U.S.C. §204, as a result of his wrongful separation *in violation of the Marine Corp Orders and Regulations* providing for notice and an opportunity for separation board before separation"—Plaintiff referred back to previously made arguments that for the reasons discussed above are unavailing. Moreover, Plaintiff introduced for the first time a new argument that is outside the allegations of his complaint: that the separation code he received is stigmatizing and, therefore, the Due Process Clause entitled him to notice and a hearing. The proper place to raise this claim was in Plaintiff's complaint, not in a supplemental brief filed after oral argument. *See Casa de Cambio Comdiv S.A., de C.V. v. United States,* 291 F.3d 1356, 1366 (Fed. Cir. 2002) (holding allegations not raised in complaint are waived); *Cochrun v. United States*, 621 F. App'x 655, 656 n.1 (Fed. Cir. 2015) ("Because he did not present that claim in his complaint, it is deemed waived.").

However, even had Plaintiff properly raised this additional claim in his complaint, it would have nonetheless failed. The foundation for Plaintiff's belatedly raised due process claim is an allegedly stigmatizing separation code. But the RE-3O code that Plaintiff received is not stigmatizing. First, the RE-3O code accurately reflects the reason that Plaintiff was transferred from the AR Program to the IRR: he decided not to extend or re-enlist because doing so would have required him to move from Virginia Beach to Phoenix. Thus, the code does not reflect misconduct or any sort of behavioral issue. Second, the non-stigmatizing nature of the code is reflected in the fact that in just under three months after receiving the RE-3O code and being transferred from the AR Program to the IRR, Plaintiff was mobilized back to the AR Program.

## CONCLUSION

For the forgoing reasons, Plaintiff's motion for judgment on the administrative record is **DENIED** and the government's cross motion for judgment on the administrative record is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge

# In the United States Court of Federal Claims

**No. 19-904C**
**(Filed: October 29, 2021)**

**CRAIG JOHNSON, JR.**

**Plaintiff**

**v** **JUDGMENT**

**THE UNITED STATES**

**Defendant**

Pursuant to the court's Opinion And Order, filed October 28, 2021, denying plaintiff's motion for judgment on the administrative record and granting defendant's cross-motion for judgment on the administrative record,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that judgment is entered in favor of defendant.

Lisa L. Reyes
Clerk of Court

By: s/Anthony Curry

Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Filing fee is $505.00.

# In the United States Court of Federal Claims

No. 19-904 C
(Filed: December 9, 2021)

* * * * * * * * * * * * * * * * * * *

**CRAIG JOHNSON, JR.,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.

* * * * * * * * * * * * * * * * * * *

## ORDER

On November 24, 2021, Plaintiff filed a motion for reconsideration, ECF No. 56, essentially arguing that a typographical error in part of a citation amounts to a "manifest injustice." RCFC 59.[1] For the following reasons, the Court disagrees.

In support of his motion, Plaintiff argues that the particular paragraph of the Marine Corps Order ("MCO") 1001.52J that the Court cited in support of one paragraph of its October 28, 2021, opinion, ECF No. 54 at 7, pertained only to officers, whereas Plaintiff was an enlisted Marine and therefore not subject to that paragraph. ECF No. 56 at 3-4. Plaintiff argues this incorrect citation is a "manifest injustice" that compels the Court to vacate its decision and grant Plaintiff's motion for judgment on the administrative record. *Id.* at 4.

There are at least two reasons that Plaintiff is not entitled to the relief he seeks. First, in order to overturn the Court's decision, Plaintiff would need to identify a substantive error in section 1 of the Court's analysis, which concluded that the Board for Correction of Naval Records ("the Board") correctly determined that Plaintiff was properly separated and transferred to the Individual Ready Reserve ("IRR"). The Court "will not disturb the decision of [a corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)). Plaintiff fails to address this section in his motion for reconsideration, in which the Court found that the "Board correctly determined,

---

[1] In the opening sentence of Plaintiff's motion, he incorrectly states that he "moves this court under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend its judgment entered on September 1, 2021." ECF No. 56 at 4. Plaintiff's motion is, of course, governed by the Rules of the Court of Federal Claims, not the Federal Rules of Civil Procedure, and, in addition, the Court entered judgment on October 29, 2021, not September 1, 2021. ECF No. 54. Had the Court entered judgment on September 1, 2021, Plaintiff's motion would have been untimely. RCFC 59(e).

Plaintiff was properly separated and transferred to the IRR pursuant to authority provided in MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, none of which require a separation board or greater notice than the page 11 entry that Plaintiff signed." ECF No. 54 at 6.

In addition, while the Court inadvertently cited to a paragraph of MCO 1001.52J governing officers, neither the Court nor the Board relied on that specifically cited paragraph in making its decision. As is evident by the rest of the citation in question, which goes on to cite page 474 in the administrative record, both the Court and the Board instead relied on a different chapter in MCO 1001.52J, which provided for "adjustments to properly shape the AR enlisted inventory and states the adjustments will be made via a MARADMIN [Marine Administrative Message]." *See* AR 474. Although the Court unintentionally cited the chapter of MCO 1001.52J that applied to officers, the very next chapter in MCO 1001.52J applied to enlisted personnel and provides the authority that the Board cited, in part, in deciding Plaintiff's claim. While the Court apologizes for any inconvenience or confusion this typographical error caused, the Board correctly applied the MCO section that related to enlisted Marines, like Plaintiff. *Id.* Accordingly, Plaintiff has failed to demonstrate a "manifest injustice," and, therefore, his motion for reconsideration is **DENIED**.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on 27 April 2022 a copy of the foregoing CORRECTED BRIEF OF PLAINTIFF-APPELLANT was filed electronically. This filing was served electronically to all parties by operation of the Court's electronic filing system.

/s/ William E. Cassara

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), this brief contains 3,209 words, as calculated by Microsoft Word, the word processing software used to prepare this brief, using a 14-point proportionally spaced typeface and type style pursuant to Fed. R. App. P. 32(a)(5) & (6).

/s/ William E. Cassara