**2022-1399**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

CRAIG JOHNSON, JR.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN No. 1:19-cv-00904-ZNS, JUDGE ZACHARY N. SOMERS

---

**BRIEF FOR APPELLEE THE UNITED STATES**

BRIAN. M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIAL M. MCCARTHY
Director

Douglas K. Mickle
Assistant Director

RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7788
email: Richard.Schroeder@usdoj.gov

September 28, 2022 Attorneys for Defendant-Appellee

# TABLE OF CONTENTS


STATEMENT OF THE ISSUE ........ 1

STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS ........ 2

I. Nature of the Case ........ 2

II. Relevant Facts And Procedural History ........ 4

A. Statement Of Facts ........ 4

B. Procedural History ........ 8

SUMMARY OF THE ARGUMENT ........ 9

ARGUMENT ........ 10

I. Standard of Review ........ 10

II. Because The Trial Court Appropriately Upheld The Board's Rejection Of Mr. Johnson's Claim, Its Decision Must Be Affirmed ........ 10

A. The Marine Corps Active Reserve Program ........ 11

B. The Options Available To Career Designated Marines Who Receive Permanent Change Of Station Orders ........ 12

C. Mr. Johnson's Arguments Are Flawed ........ 14

D. Mr. Johnson Does Not Adequately Support His Claims That He Was Entitled To Additional Notice And A Separation Board ........ 17

E. Mr. Johnson Has Asserted No Other Grounds That Justify Overturning The Trial Court's Judgement ........ 24

CONCLUSION ........ 30

# TABLE OF AUTHORITIES

## Cases

*Casa Di Cambio Comdiv, S.A., de C.V. v. United States,*
291 F.3d 1356 (Fed. Cir. 2022)....................27

*Dorl v. United States*,
200 Ct. Cl. 626 (Ct. Cl. 1973)....................15

*Palantir USG, Inc. v. United States,*
904 F.3d 980 (Fed. Cir. 2018)....................16

*Prestonback v. United States,*
965 F.3d 1363 (Fed. Cir. 2020).................... 16, 21

*Richey v. United States*,
322 F.3d 1317 (Fed. Cir. 2003)....................16

*Sanders v. United States*,
594 F.2d 804 (Ct. Cl. 1979)....................15

*SmithKline Beecham Corp. v. Apotex Corp.,*
439 F.3d 1312 (Fed.Cir.2006)....................15

*United States v. Charles,*
469 F.3d 402 (5th Cir.2006)....................15

*United States v. Great American Ins. Co. of New York,*
738 F.3d 1320 (Fed. Cir. 2013).................... 15, 27

*Wronke v. Marsh*,
787 F.2d 1569 (Fed. Cir. 1986)....................18

## Statutes

37 U.S.C. § 204....................14

**Miscellaneous**

Marine Corps Administrative Message (MARADMIN) 552/12, ¶ 4(I)(6) ...... 13, 26

MARADMIN 552/12 ........................................................................... *passim*

Marine Corps Order (MCO) 1001.52J ¶ 16 ...............................................................2

MCO 1001.52J ........................................................................................ *passim*

MCO P1300.8R ¶ 1102 ............................................................................ *passim*

Marine Corps Separation Manual (MARCORSEPMAN) 1002 ¶ 50 ......... 17, 18, 19

MARCORSEPMAN 1005 ¶ 3 ................................................................... *passim*

MARCORSEPMAN 2003 ¶ 17 ...........................................................................19

MARCORSEPMAN 6201 ...................................................................................21

MARCORSEPMAN Chapter 6 ........................................................... 18, 20, 21

MARCORSEPMAN Table 6-2...........................................................................21

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, counsel for defendant-appellee, the United States, states that he is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title. Defendant-Appellee's counsel is also unaware of any cases currently pending before this Court that will directly affect or that will be directly affected by the Court's decision in this appeal.

**2022-1399**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

CRAIG JOHNSON, JR.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES COURT OF FEDERAL CLAIMS IN No. 1:19-cv-00904-ZNS, JUDGE ZACHARY N. SOMERS

---

# BRIEF FOR APPELLEE, THE UNITED STATES

## STATEMENT OF THE ISSUE

Should the Court affirm the trial court's judgment for the United States, sustaining the decision of the Board for Correction of Naval Records' (BCNR or board), which in turn found that the United States Marine Corps had lawfully transferred plaintiff-appellant, Craig Johnson Jr., from the Marine Corp's Active Reserve Program to the Individual Ready Reserve, after he had refused to execute orders to relocate from Virginia Beach, Virginia to Phoenix, Arizona?

## STATEMENT OF THE CASE SETTING FORTH RELEVANT FACTS[1]

### I. Nature of the Case

Mr. Johnson appeals from a judgment, opinion and reconsideration decision that concerned the consequences of his refusal to comply with Marine Corps (or USMC) orders that he relocate to another part of the country to serve as a recruiter.

The USMC's Active Reserve (or AR) Program integrates Reservists within the Marine Corps' active-duty component by issuing them active-duty orders. At all relevant times, Mr. Johnson was a "Career Designated Marine," as a result of having reenlisted for 48 months in the Active Reserve Program – his second such reenlistment – in November 2011. Appx2 (citing Appx547); *see also* Appx619, Marine Corps Order (MCO) 1001.52J ¶ 16 ("A Career Designated Marine is defined as a Marine who has successfully reenlisted for a second tour on the AR Program. A second tour is a reenlistment of 36 or more months in the AR Program.").

In March 2013, while Mr. Johnson was serving in active duty status in the AR Program, the Marine Corps issued him permanent change of station (PCS) orders to transfer from Virginia Beach, Virginia to Phoenix, Arizona, with a report date of June 9, 2013. Appx2. Because the PCS orders directed Mr. Johnson to

---

[1] Pages of Mr. Johnson's opening brief in this appeal is cited "Pl. Br. __." Pages of the joint appendix in this appeal are cited "Appx__."

serve in Phoenix as a recruiter for 36 months, but he only had 29 months left on his Reserve contract, Mr. Johnson could either extend his reenlistment for a time period sufficient to complete the 36 month assignment in Phoenix, or decline the orders and accept the consequences. *See* Appx2-3. Those consequences included being released from active duty to the Individual Ready Reserve (or IRR) and being assigned an RE-3O reenlistment code that could make him ineligible for promotion to warrant officer. *See* Appx2-3.

Because Mr. Johnson was worried about the sale value of his home, he attempted to convince the Marine Corps to change his PCS orders but, when that failed, he "refused his orders to relocate." Appx2. As a result, the Marine Corps transferred Mr. Johnson from the Active Reserve to the Individual Ready Reserve (or IRR), and assigned him a reenlistment code of "RE-3O" which, upon his subsequent remobilization back into the AR Program, precluded his promotion to warrant officer. *See* Appx2-3; Pl. Br. 2.

Mr. Johnson raises two central issues. First, he claims that he was entitled to a greater degree of notice than he was provided. Second, he alleges that he was entitled to a separation board that he was not afforded. He requests that the Court reverse the trial court's judgment, and remand the matter to the trial court to enter judgment in his favor. Pl. Br. 15.

As we establish below, the Marine Corps transfer of Mr. Johnson to the IRR following his refusal of his PCS orders was expressly authorized by Marine Corps regulations. Because Mr. Johnson has failed to establish that he was entitled to additional notice or a separation board, and because he has failed to raise any other basis to overturn the trial court's decision, the trial court's judgment should be affirmed.

## II. Relevant Facts And Procedural History

### A. Statement Of Facts

Mr. Johnson initially enlisted as a reservist in the Marine Corps Reserve on April 13, 1999 for eight years (six years in a drilling status with the Selected Marine Corps Reserve and two years in a non-drilling status with the IRR). Appx346-347; s*ee also* Appx2.[2] On May 12, 2006, Mr. Johnson extended his enlistment for an additional 23 months, in order to affiliate with the Active Reserve Program. Appx528-529. Mr. Johnson reenlisted for three years on November 25, 2008, and then on November 10, 2011, he reenlisted for a second time – this time for four years – making November 9, 2015 his "then-scheduled end of active service (or EAS) date[.]" Appx547. As a result of his second reenlistment in the

[2] As its name implies, drilling status refers to a reservist's requirement to mobilize for "drills" (training periods) at some defined frequency. A non-drilling reservist has no such requirement.

Active Reserve, Mr. Johnson became a Career Designated Marine, as defined under MCO 1001.52J. Appx2; Appx547.

On March 17, 2013, the Marine Corps issued PCS orders for Mr. Johnson to relocate from Virginia Beach to Phoenix, where he was to serve as a recruiter for 36 months. Appx2; Appx56. Since his report date was June 9, 2013, Mr. Johnson would only have been able to serve for 29 months in this assignment before his scheduled EAS date of November 9, 2015, unless he reenlisted or extended his enlistment period. Appx2; Appx56; Appx98.

Mr. Johnson apparently believed that he would have difficulty selling his house in the Virginia Beach area because "his neighbors in Virginia Beach were having to 'short-sell' their home, which would immediately impact the anticipated sale value of [his] home." Appx2; Appx547; *see also* Appx138-139; Appx158-160. Therefore, Mr. Johnson "attempted to have his orders changed so that he could be posted closer to Virginia Beach to manage this potential 'financial hardship.'" Appx2; Appx19-20 ¶ 7; Appx547. Alternatively, Mr. Johnson sought an extension of his report date under the new PCS orders to facilitate being able to sell his home and maintain some family geographic stability. Appx2; Appx19-20 ¶ 7; Appx547. After those attempts proved unsuccessful, Mr. Johnson refused to execute his orders to relocate to Phoenix. Appx2; Appx19-20 ¶ 7; Appx547.

As memorialized in a June 10, 2013 email from his Sergeant Major to his Master Sergeant, the Marine Corps apprised Mr. Johnson of the consequences of declining to execute his PCS orders, and he was counseled to reconsider, as follows:

> SSgt Johnson has elected not to execute his orders. I have spoken to him and he knows the outcome of his decision. [His] reasoning is that it would create a hardship for his family. I have tried to get him to use sound judgment in his decision making, but unfortunately he came to this conclusion.

Appx136.[3]

On June 11, 2013, as a consequence of failing to execute his PCS orders, Mr. Johnson signed an Administrative Remarks form (known as a "page 11"), which was entered in his service record, and expressly stated:

> I have been assigned reenlistment eligibility code RE-3O. Reason: I will not reenlist/extend to comply with PCS orders. I have been advised that Marines assigned this code are not eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs or involuntary separation pay unless specifically authorized by the [Commandant of the Marine Corps]. I have been given the opportunity to submit a statement and that statement if submitted, will be filed on the document side of my [Service Record Book].

Appx82.

[3] In the Marine Corps, a command's Sergeant Major is the senior enlisted advisor to the commander.

On June 30, 2013, the Marine Corps transferred Mr. Johnson from the Active Reserve Program to the IRR, thereby ending his active service, and issued him a DD Form 214 (certificate of discharge or release from active duty) reflecting the RE-3O code regarding his re-enlistment eligibility. Appx3; Appx99; Appx115; Appx547. Mr. Johnson's DD-214 elsewhere erroneously stated that he had been transferred to the Fleet Marine Corps Reserve (FMCR), but this was corrected to reflect his transfer to the IRR. See Appx99 (block 23); AR550 (BNCR's remand decision, noting that the erroneous entry on the DD 214 was corrected pursuant to a DD 215, issued on July 11, 2013, to reflect Mr. Johnson's transfer to the IRR). The initial error is not material to the issues in this appeal.

Roughly three months later, on September 23, 2013, the Marine Corps mobilized Mr. Johnson from the IRR to the Active Reserve Program, and he was stationed in Quantico, Virginia. Appx3; Appx20 ¶ 10; Appx452; Appx547-548; Appx560. After the Marine Corps selected and then preliminarily approved Mr. Johnson on December 13, 2013 for appointment to warrant officer, it notified him on January 14, 2014 that his appointment would be delayed due to the RE-3O code in his record. Appx547-548. In September 2016, Mr. Johnson reenlisted in the Marine Corps Reserve for two years.

Mr. Johnson thereafter petition the BCNR for relief, including challenging the assignment of the RE-3O code and his related ineligibility for the Marine

Corps' warrant officer program, but the board denied him relief in a 2017 decision, in a 2018 reconsideration decision, and again in the BCNR's July 28, 2020 remand decision. *See* Appx548, Appx556.

### B. Procedural History

On June 30, 2016, Mr. Johnson wrote to the Secretary of the Navy requesting removal of the RE-3O code so that the delay of his appointment could be lifted. Appx128-129; s*ee also* Appx3, Appx548. On December 13, 2022, the Marine Corps' Deputy Commandant (Manpower & Reserve Affairs), informed Mr. Johnson that before action could be taken on his request, he had to petition the BCNR for removal of the RE-3O entry. *See* Appx548.

Mr. Johnson petitioned the board on January 18, 2022 to remove the RE-3O code and grant him an appointment to warrant officer but, on his petition subsequently was denied. Appx548. On November 3, 2017, Mr. Johnson sought reconsideration by the board, but on September 27, 2018, the board denied that appeal as well. Appx548.

On June 20, 2019, Mr. Johnson filed his complaint in the Court of Federal Claims, seeking review of the board's actions. Subsequently, that court remanded the matter to the board, which issued a decision on July 28, 2020. *See* Appx546-556 (BCNR Docket No. 10491-19). The board again denied Mr. Johnson's claims, supported in large part by a comprehensive advisory opinion from the head of the

USMC's Military Personnel Law Branch. Appx546-556; Appx558-566. The board determined that "it was not error or injustice for the Marine Corps to follow the requirements of" Marine Corps Administrative Message (MARADMIN) 552/12" – one of the regulations that governed the Marine Corps' actions with respect to Mr. Johnson – and to release him "from the AR Program at the effective date of the orders [June 2013] and assign [him] a RE-3O reenlistment code after [he] refused to execute [his] PCS orders to Phoenix, Arizona." Appx555; *see also* Appx3.

Following the BCNR's remand decision, the trial court denied Mr. Johnson's motion for judgment on the administrative record, granted our cross-motion, and entered judgment in favor of the Government. Appx9-10. Mr. Johnson's opening brief adequately describes the trial court's central holdings and denial of his motion for reconsideration. *See* Pl. Br. 8.

This appeal followed.

## SUMMARY OF THE ARGUMENT

Mr. Johnson does not contest the factual findings set forth set forth in the trial court's decision. Instead, he takes issue with how the Marine Corps' governing regulations were applied to his refusal to execute his PCS orders to relocate from Virginia Beach to Phoenix, which present issues of law. In particular, Mr. Johnson asserts, but fails to establish, that he was entitled to a

higher level of notice than he received, and that he should have been granted a separation board.

The trial court correctly upheld that the board's determination that Mr. Johnson "was properly separated and transferred to the IRR pursuant to authority provided in MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, none of which require a separation board or greater notice than the page 11 entry that [Mr. Johnson] signed." Appx6. Mr. Johnson presents no convincing arguments to the contrary.

There are no material factual disputes, and the Court must affirm that trial court's decision as a matter of law.

## ARGUMENT

### I. Standard of Review.

We concur with Mr. Johnson's statement of the Court's standard of review. *See* Pl. Br. 8-9.

### II. Because The Trial Court Appropriately Upheld The Board's Rejection Of Mr. Johnson's Claim, Its Decision Must Be Affirmed

Mr. Johnson mainly relies on his own conclusory assertions that he was entitled to certain procedural safeguards that the Marine Corps did not provide, but he fails to establish any such violation or other basis for relief. In the subsections below, we briefly outline the Marine Corps Active Reserve Program, set forth the regulatory framework that governed his transfer from Active Reserve to the IRR,

and then rebut Mr. Johnson's arguments.

### A. The Marine Corps Active Reserve Program

As the trial court observed, Marines in the Active Reserve "operate on a full-time basis to support the various functions of the" Marine Corps Reserve. Appx2; (citing MCO 1001.52J), *see* Appx585 ¶ 3 (additional citation omitted)). The Active Reserve Program was intended to "facilitate the integration of the U.S. Marine Corps Reserve (USMCR) in the total force" and to "assist the Active Component . . . with their total force integration roles and responsibilities" through the mobilization of Reserve Component Marines to engage in "(1) organizing, preparing and administering policies and regulations affecting the USMCR; (2) training and instructing the USMCR; (3) recruiting and retention for the USMCR; and (4) administration of USMCR personnel." Appx585 (MCO 1001.52J § 4(a)(1)–(2)); *see also* Appx2.

Notably,

> [w]hile [Reserve Component] membership is required for accession/retention in the AR Program, the two are not synonymous. Contractual time in the reserve component does not guarantee continued service in the AR Program. . . . Any determinations for continuation in the AR Program will be decided by [Headquarters Marine Corps] based on the needs of the AR program.

Appx621 § 19; *see also* Appx72 (MARADMIN 552/12) ("Reenlistment and retention in the AR Program are not synonymous. Marines may be reenlisted in

the Selected Marine Corps Reserve (SMCR) and not retained in the AR Program.").

### B. The Options Available To Career Designated Marines Who Receive Permanent Change Of Station Orders

It is undisputed that when Mr. Johnson refused to execute his PCS orders to relocate from Virginia Beach to Phoenix, he was a Career Designated Marine in the Active Reserve Program. As the trial court correctly found, "career enlisted Marines, like" Mr. Johnson, "who receive [permanent change of station orders] that extend beyond their then-current end of active service date have an option: either 'extend/reenlist in order to have the required active service,' or, if they do not desire to 'extend/reenlist in order to qualify for assignment[,] [they must] sign [a] page 11 . . . entry.'" Appx5-6 (quoting MCO P1300.8R ¶ 1002); *see also* Appx2 & Appx51-52 (setting forth ¶ 1002 at length).

Because Mr. Johnson had only 29 months left until his then-scheduled end of active service at the time relevant to his PCS orders, and because the orders were to serve as a recruiter for 36 months, he had the option to either extend his enlistment so that he would have sufficient active service available to comply with the orders, or refuse the orders. *See* Appx2 (quoting MCO P1300.8R ¶ 1102). But refusing permanent change of station orders is not without consequences. Rather, there were policies in place that instructed his chain of command about what to do.

Because Mr. Johnson refused to extend his enlistment "in order to qualify

for the assignment" in Phoenix, he was required to sign a "page 11" entry pursuant to MCO P1300.8R ¶ 1002, which provided what was to be included in the entry:

> A signed copy of the page 11 entry will be expeditiously forwarded to the CMC . . . :
>
> "I have been assigned reenlistment eligibility code RE-3O. Reason: I will not reenlist/extend to comply with PCS orders. I have been advised that Marines assigned this code are not eligible for promotion, reenlistment, commissioning or warrant officer programs, special education programs, or involuntary separation pay unless specifically authorized by the CMC (MMEA). I have been given the opportunity to submit a statement and that statement, if submitted, will be filed on the document side of my SRB. I choose to/not to submit a statement."

Appx51-52 (quoting MCO P1300.8R, ¶ 1102). This is consistent with the page 11 that Mr. Johnson actually signed (he circled the word "to" after the word "choose" in the last sentence of his page 11). *See* Appx82.

Another regulation instructed the Marine Corps as follows:

> Career designated Marines who refuse to reenlist or extend in order to execute [PCS orders] *will be released from the AR Program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code.*

Appx70 (MARADMIN 552/12, ¶ 4(I)(6)) (emphasis added); *see also* Appx5.

Further, in Mr. Johnson's specific circumstances, USMC procedures provided that the Marine was to be released from the AR Program, transferred to

the IRR, and issued the specific reenlistment code of RE-3O. Appx5 (citing Appx673, MARCORSEPMAN 1005 ¶ 3).

As the trial court and board both pointed out, this is precisely what happened with Mr. Johnson. *See* Appx6; *see also* Appx549-552. This makes sense because, when Mr. Johnson refused his PCS orders, he had not yet fulfilled his obligation to the Marine Corps Reserve.

**C. Mr. Johnson's Arguments Are Flawed**

Rather than establish that the Marine Corps erred in following the previously discussed policies and procedures, Mr. Johnson does not effectively grapple with them. *See* Pl. Br. 9-15. This is telling because those provisions address the precise factual circumstances that the Marine Corps and Mr. Johnson faced as a result of his decision to refuse his PCS orders.

Also telling is that the trial court provided Mr. Johnson an additional chance to substantiate his claims, through supplemental briefing following oral argument, but ended up disappointed by the absence of authority to support Mr. Johnson's position, stating:

> Based on the discussion of this brief during oral argument, the Court anticipated that the brief would provide USMC orders and policies that Plaintiff had not previously cited. However, rather than support the sole allegation of Plaintiff's complaint—that the Marine Corps failed to give him "the pay and allowances that he is entitled to receive under 37 U.S.C. §204, as a result of his wrongful separation *in violation of the Marine*

> *Corp[s] Orders and Regulations* providing for notice and an opportunity for separation board before separation"—plaintiff referred back to previously made arguments that . . . are unavailing.

Appx8-9.

In this appeal, Mr. Johnson *still* has failed to point to any applicable statutory or regulatory language that required the Marine Corps to provide him with additional notice or a separation board. His failure to do so simply underscores the weakness of his position.

"It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." *United States v. Great Am. Ins. Co. of New York,* 738 F.3d 1320, 1328 (Fed. Cir. 2013) (citing, e.g., *SmithKline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1320 (Fed.Cir.2006) (collecting cases); *United States v. Charles,* 469 F.3d 402, 408 (5th Cir.2006) ("Inadequately briefed issues are deemed abandoned.")).

Further, the burden in this case has always been on Mr. Johnson, not the Government. Before the trial court, Mr. Johnson bore the burden to establish by "cogent and clearly convincing evidence" that the BCNR's decision should be overturned. *Dorl v. United States*, 200 Ct. Cl. 626, 633 (Ct. Cl. 1973); *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citations and internal quotations omitted); *see also Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979) (plaintiff bears the burden to "overcome the strong, but rebuttable, presumption

that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith"), *superseded on other grounds by statute*, *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003).

That burden did not change when he filed his current appeal in this Court, which reviews "a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record de novo, applying the same standard of review as the trial court." *Prestonback v. United States,* 965 F.3d 1363, 1368 (Fed. Cir. 2020) (citing *Palantir USG, Inc. v. United States,* 904 F.3d 980, 989 (Fed. Cir. 2018) (additional citation omitted)).

Although the issues that Mr. Johnson raises mainly present questions of law, the absence of applicable statutory or regulatory provisions in his opening brief to support his position that the Marine Corps failed to provide him with alleged required procedural safeguards – even after the trial court specifically requested that such support be provided in a supplemental briefing – dooms his appeal. Throughout his argument, Mr. Johnson relies on little else but his own conclusory assertions to support his claims. *See* Pl. Br. 9-15. It is not the Government's burden to disprove those conclusory assertions. It is Mr. Johnson's burden to prove them, which he has failed to do.

### D. Mr. Johnson Does Not Adequately Support His Claims That He Was Entitled To Additional Notice And A Separation Board

At the heart of Mr. Johnson's appeal are his claims that he was entitled to greater notice than he received, and that his transfer to the IRR was unlawful because the Marine Corps did not provide him a separation board. Pl. Br. 11-13. Mr. Johnson has not come close to proving those claims.

Mr. Johnson opens his argument in a roundabout way. Instead of presenting a detailed discussion exploring the regulatory basis for his conclusion that he was entitled to procedural safeguards that he did not receive, Mr. Johnson contends that his transfer to the IRR is defined as a type of separation by MARCORSEPMAN (the Marine Corps Separation Manual) 1002 ¶ 50. *See* Pl. Br. 9-11. He may hope that an inference will be drawn that if the Marine Corps takes action concerning a member of the Active Reserve that can be defined as a type of separation – in this case, a transfer to the IRR – then the Marine necessarily would be viewed as being entitled to a particular level of notice and the right to a separation board.

Attempting to bolster his argument, Mr. Johnson refers to his four-year 2011 reenlistment contract, and asserts that he was "separated, according to the definition in the MARCORSEPMAN, and received a negative reentry code." *See* Pl. Br. 12-13. Consequently, Mr. Johnson argues that his transfer amounted to a "discharge" and that he "was entitled to notice and separation notification

procedures" contained in MARCORSEPMAN (the Marine Corps Separation Manual) Chapter 6. Pl. Br. 11-12.

Similarly, Mr. Johnson alleges that, because "he was separated, according to [a] definition in the MARCORSEPMAN, and received a negative reentry code, [i]t follows that he should have received a separation board, rather than being separated by a page 11 entry . . . ." Pl. Br. 13 (emphasis added).

Mr. Johnson's arguments are off track. While MARCORSEPMAN 1002 ¶ 50 may establish that a transfer from active duty to the IRR is a type of separation, the definition itself does not provide a right to a separation board or a particular level of notice, or set forth any other procedural requirements or entitlements. And without identifying any applicable statutory, regulatory, or similar requirements, it certainly does not "follow that" Mr. Johnson was entitled to a separation board, as he claims.

Thus, Mr. Johnson's argument that his transfer to the IRR was a separation cannot move his argument forward, unless he establishes that statutory or regulatory provisions entitled him to such safeguards, which he does not do. Consequently, Mr. Johnson's discussion of whether a transfer to the IRR should be classified as a separation is a red herring.

And Mr. Johnson's related argument that his transfer to the IRR was a "discharge" is not supported by definition contained in the provision that he

quotes, which actually defines a separation as a general term encompassing numerous types of changes to a Marine's active or reserve status, of which a discharge and transfer to the IRR are but two of the separate examples listed. *See* Pl. Br. 10 (quoting MARCORSEPMAN 1002 ¶ 50); *see also* Appx665.

To the contrary, the provision's plain meaning is that a discharge and a transfer to the IRR are two separate things, notwithstanding that each may be a type of separation. Merely because something falls within a same general category as something else, does not mean that they are the same. Dogs and cats are both animals and, in fact, are both commonly kept as pets, but they are not the same.

In addition, the definition of discharge contained in the same document cited by Mr. Johnson, *see* MARCORSEPMAN 2003 ¶ 17, refers to the "[c]omplete severance of all military status" and does not include any reference to participation in the IRR. Appx662. Thus, Mr. Johnson's argument misses the mark.

Mr. Johnson also appears to argue that his transfer to the IRR under section 1005 of the MARCORSEPMAN, as reflected on his DD Form 214 (as amended), was only permissible if he completed his period of enlistment or fulfilled his service obligation, at least in the absence of a separation board. *See* Pl. Br. 10-13. Contrary to Mr. Johnson's position, however, section 1005 is not limited to

Marines who have completed their enlistments or fulfilled their service obligations. As explained by the BCNR:

> Per the MARCORSEPMAN, Reservists in the AR period of active duty service are issued a DD Form 214 when released from a period of active duty service. These DD Form 214 termination of active duty documents are not separation documents that would fall under the purview of the MARCORSEPMAN chapter regarding total separation (or firing) from service, but instead note the completion of required active service.
>
> . . . .
>
> Again, the Board noted that, due to the adjustment of your [end of active service] in accordance with MARADMIN 552/12, you had completed your active duty and, as a Reservist, were being released from your period of activation or active duty, and transferred to the IRR—instead of discharged from the service . . . .

Appx550-551. Mr. Johnson has failed to present any argument establishing that the Marine Corps was required to treat a transfer from active duty to the IRR the same as a discharge from the Marine Corps altogether. His argument, therefore, fails.

Mr. Johnson also argues that, because his enlistment contract allegedly "was changed, he was discharged and entitled to notice and separation procedures under chapter 6 of the MARCORSEPMAN." Pl. Br. 11-12. And he relatedly claims that that because "he was separated from active duty prior to his contract EAS date, his separation was involuntary" and "the notification procedures of 6303 should have been followed." Pl. Br. 13-14. In addition to the deficiencies in Mr. Johnson's

arguments discussed above, and his failure to disclose the details of the alleged procedural safeguards, he crucially fails to establish that Chapter 6 applied to him at all. As the trial court correctly concluded, it did not apply. *See* Appx6-9.

While we recognize that, given the legal nature of the issues, the *de novo* standard of review applies in this appeal, *see Prestonback,* 965 F.3d at 1368, we nonetheless observe that the trial court's opinion was soundly reasoned and thoroughly refuted the arguments that Mr. Johnson presented below. In his opening brief, Mr. Johnson fails to effectively rebut the trial court's detailed analysis, because it cannot reasonably be rebutted.

In particular, the trial court acknowledged that under "certain circumstances," chapter 6 of the MARCORSEPMAN "provides for written notice requirements and a right to a separation board for Marines separated before the end of their enlistment period" but that, in Mr. Johnson's case, "the procedures and instructions for administrative separations contained in" that chapter "do not apply to [his] separation and transfer to the IRR, because the reason for [his] separation and transfer is not covered by chapter 6." Appx6 (citing MARCORSEPMAN 6201 *et seq.,* which the trial court states listed "the reasons covered by chapter 6 that permit a commander to recommend involuntary separation of a Marine before the expiration of the Marine's current contract"); *see also* Appx770; Appx8 (citing MARCORSEPMAN Table 6-2, Appx691-698, which, as the trial court correctly

noted, set forth "the circumstances that require a separation board" and, as the trial court also observed, Mr. Johnson's "basis for separation—refusal to follow PCS orders—is not listed among those circumstances.").

The trial court also found that Mr. Johnson failed "to pay heed to the opening paragraph of chapter 6" which, among other things, provides that "*[u]nless specifically authorized by separate order*, only the reasons contained in this chapter may form the basis for a Marine's separation, whether voluntarily or involuntarily." Appx6-7 (quoting MARCORSEPMAN 6001, Appx678). As the trial court observed, "the chapter 6 procedures and instructions" that Mr. Johnson claimed entitled "him to notice and a separation board prior to his administrative separation are superseded when 'specifically authorized by separate order.'" Appx7; Appx678.

The trial court then circled back to the central provisions discussed previously in this brief, and correctly found that "a separate order . . . , MCO 1001.52J" applied and superseded Chapter 6. *See* Appx7. And through that provision, MARADMIN 552/12 was "the policy that applied to" Mr. Johnson's circumstances, and . . . it provides that 'Career designated Marines who refuse to reenlist or extend in order to execute [permanent change of station orders] will be released from the AR program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code.'" Appx7 (quoting

Appx70). The trial court, therefore, found that "under the authority of MARADMIN 552/12," Mr. Johnson's "EAS date was properly shortened to June 30, 2013, and he was transferred to the IRR." Appx7.

The trial's analysis is well-supported and sound, and that court properly rejected Mr. Johnson's arguments that he was entitled to a greater notice and a separation board pursuant to Chapter 6. *See* Appx6-9. In other words, the procedural safeguards in chapter 6 are irrelevant to Mr. Johnson's circumstances and provide no basis for a successful challenge.

Rather than seriously grapple with the trial court's reasoning, Mr. Johnson instead relies primarily on his own conclusory and largely unsupported opinions, treating his transfer from the Active Reserve to the IRR as if had been discharged from the Marine Corps altogether, which he had not.

Mr. Johnson also speculates that had he had a separation board, this may have led to a different result, in light of his offer "to swap orders" with "another Marine," and he cites his "financial hardship at home" – without mentioning its relationship to real estate values. Pl. Br. 15. Missing from that discussion is specific statutory or regulatory provisions establishing that Mr. Johnson was entitled to a separation board. Without such entitlement, Mr. Johnson's point is irrelevant.

Mr. Johnson similarly contends that because the BCNR allegedly "failed to ensure that procedural safeguards were followed, relying on written notification instead of a separation board, its actions [were] arbitrary and capricious and should be set aside." Pl. Br. 14. Mr. Johnson's argument contains the same unproven premise – that certain required safeguards were not provided to him – that appears throughout his brief. As such, the argument is invalid.

In light of the above, Mr. Johnson has failed to establish any basis for overturning the trial court's judgment with respect to his claims that he was entitled to additional notice and a separation board.

### E. Mr. Johnson Has Asserted No Other Grounds That Justify Overturning The Trial Court's Judgment

None of Mr. Johnson's remaining arguments provide any basis for overturning the trial court's judgment or for granting him relief.

For example, with respect to the applicability of MARADMIN 552/12, Mr. Johnson argues that "[t]he only uses of MARADMIN in MCO 1001.52J relate specifically to Officer Accessions" and similar administrative matters, and that nothing in the MARADMINs provides authority to "separate Marines early, as was done via MARADMIN 552/12." Pl. Br. 14-15.

Once again, Mr. Johnson fails to adequately explain his argument, or to set forth a convincing legal basis to support it, and his argument must be rejected, particularly in light of his admission that he "does not dispute the validity of

MARADMIN 552/12." Pl. Br. 15. Moreover, Mr. Johnson's point is incorrect, as MCO 1001.52J refers to and incorporates the "MARADMIN regarding AR Enlisted Career Force Controls" no less than three times with respect to enlisted participation in the AR Program. Appx610, Appx611 & Appx623.

Further, the conclusion espoused by Mr. Johnson – that MARADMIN 552/12 was inapplicable to his situation – is illogical. As explained by the trial court, this would require the court (as well as the Marine Corps and the BCNR) to ignore MARADMIN 552/12, MARCORSEPMAN 1005 ¶ 3, and MCO P1300.8R ¶ 1102, and to find that a Marine who refuses to execute PCS orders under the Active Reserve Program, and who has time remaining on his or her Reserve enlistment contract can only be processed under Chapter 6 of the MARCORSEPMAN. Appx8. This would, of course, render the Active Reserve Program and its governing regulations meaningless and, in the words of the trial court, potentially "wreak havoc on the USMC." Appx8.

And Mr. Johnson does not further provide any authority to support his argument, which provides no basis to overturn the trial court's judgment, especially given that he acknowledges that MARADMIN 552/12 is valid. To reiterate, provisions that we previously discussed cover the very circumstances in which the Marine Corps and Mr. Johnson found themselves. As we already have established:

> Career designated Marines who refuse to reenlist or extend in order to execute [PCS orders] *will be released from the AR Program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O reenlistment code*.

Appx70 (MARADMIN 552/12, ¶ 4(I)(6)) (emphasis added); *see also* Appx5.

As we also have previously established, in situations such as Mr. Johnson's case, USMC procedures provide that the Marine is to be released from the AR Program, transferred to the IRR, and issued the specific reenlistment code of RE-3O. Appx5 (citing Appx673, MARCORSEPMAN 1005 ¶ 3). This is exactly what occurred in this case.

In connection with the RE-3O code, Mr. Johnson refers in passing in his opening brief to the allegedly "stigmatizing reentry code that prevented his promotion to Warrant Officer," *see* Pl. Br. 2, 8, but he does not present any argument pursuing an independent claim concerning the alleged "stigmatizing" nature of the reentry code. *See* Pl. Br. 6-15. Mr. Johnson does assert in his summary of argument that he "was denied notice and opportunity to a separation board before being separated with a stigmatizing reentry code that prevented his promotion to Warrant Officer." Pl. Br. 8. But his reference to a "stigmatizing reentry code" in that statement is made to support his claim that he allegedly was wrongfully denied a separation board. This is reenforced by the fact that the

argument portion of his brief contains no claim challenging the RE-8O code as "stigmatizing."

As previously noted, "[i]t is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." *Great American Ins. Co.,* 738 F.3d at 1328 (citations omitted). Waiver is particularly appropriate in this case, where the trial court expressly explored Mr. Johnson's claim and rejected it, and Mr. Johnson has decided not to challenge that aspect of the trial court's decision in this appeal. *See* Appx8-9.

Specifically, the trial court rejected Mr. Johnson's argument that the RE-3O code was stigmatizing and, therefore, Mr. Johnson was entitled to notice and a hearing pursuant to the Due Process Clause of the constitution. Appx9. The trial court reasoned that the claim was untimely because Mr. Johnson raised for the first time in his supplemental briefing following oral argument, rather than in his complaint. Appx9 (citing *Casa di Cambio Comdiv, S.A., de C.V. v. United States,* 291 F.3d 1356, 1366 (Fed. Cir. 2022) (additional citation omitted)).

The trial court also rejected the claim on the merits, holding that the claim was not stigmatizing because it accurately reflected that he had been transferred to IRR, as well as the reasons for that transfer, which did not include any behavioral issue or misconduct, and because Mr. Johnson was mobilized back to the AR Program less than three months later. Appx9.

Because Mr. Johnson's has failed to challenge the trial court's decision concerning Mr. Johnson's abandoned challenge based on the alleged stigmatizing nature of the RRE-3O code, the issue has been waived, and there is no need to resolve it.

Mr. Johnson's also argues that his enlistment contract was a legal agreement to serve on active duty for four years through his then-November 2015 EAS date, but his argument leads nowhere. *See* Pl. Br. 11-13. This appears to be related to his arguments that he was entitled to additional notice and a separation board, which we already have rebutted.

In any event, as reflected in his 2011 reenlistment contract, Mr. Johnson expressly acknowledged that he was "enlisting/reenlisting in the United States Marine Corps Reserve this date for 4 years and 0 months . . . of which . . . 4 years and 0 months will be served in the Reserve Component of the Service in which I have enlisted." Appx371, Block 8.

As provided in MCO P1001.52J, "[w]hile [Reserve Component] membership is required for accession/retention in the AR Program, the two are not synonymous. Contractual time in the reserve component does not guarantee continued service in the AR Program." Appx621 (MCO 1001.52J, encl. (1), Chap. 3, § 19); *see also* Appx72 (MARADMIN 552/12) ("Reenlistment and retention in

the AR Program are not synonymous. Marines may be reenlisted in the Selected Marine Corps Reserve (SMCR) and not retained in the AR Program.”).

While Mr. Johnson’s participation in the Active Reserve Program authorized him to execute active-duty orders in support of the Marine Corps Total Force, such participation was subject to all requirements of the program, including the obligation to reenlist or extend as necessary to execute PCS orders. By refusing to execute the PCS orders issued to him, Mr. Johnson became subject to MARADMIN 552/12’s requirement to “be released from the AR program,” which he properly was, leaving him to complete the remainder of his enlistment contract in the Reserve Component.

Thus, the BCNR correctly found that Mr. Johnson had “simply contracted to serve in the USMCR for four years, not at a specific duty station, and not specifically on active duty in the AR Program” and that he had “contracted to serve as a *reservist,* not necessarily an *activated reservist*.” Appx552, Appx555. Nothing about that determination was arbitrary, capricious, contrary to law, or unsupported by substantial evidence, and there is no merit to any claim that Mr. Johnson’s enlistment contract was a legal agreement to serve on active duty for four years.

Finally, Mr. Johnson concludes his arguments by asserting that because he allegedly was “involuntarily transferred/separated/released to the IRR[,]” “[i]t does

not matter what label you put on it, it was an action that should have triggered a separation board." Pl. Br. 15.

Mr. Johnson's statement is nothing more than the expression of his opinion. For reasons previously explained, he has failed to back up his opinion with any applicable statutory or regulatory provisions that required the Marine Corps to provide him with more procedural safeguards than her received. Therefore, this argument must be rejected as well.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the judgment of the United States Court of Federal Claims.

Respectfully submitted,

BRIAN. M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIAL M. MCCARTHY
Director

/s/ *Douglas K. Mickle*
*by Steven J. Gillingham*
Douglas K. Mickle
Assistant Director

/s/ *Richard P. Schroeder*
RICHARD P. SCHROEDER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
PO Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7788
email: Richard.Schroeder@usdoj.gov

September 29, 2022

Attorneys for Defendant-Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-1399

**Short Case Caption:** Johnson v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,730 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 09/29/2022

Signature: /s/ Richard P. Schroeder

Name: Richard P. Schroeder