# United States Court of Appeals for the Federal Circuit

---

**CRAIG JOHNSON, JR.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1399

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00904-ZNS, Judge Zachary N. Somers.

---

Decided: August 3, 2023

---

WILLIAM CASSARA, I, Cassara Law Office, Evans, GA, argued for plaintiff-appellant.

JOSHUA A. MANDLEBAUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE.

---

Before LOURIE, HUGHES, and STARK, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Craig Johnson, Jr. appeals a decision from the United States Court of Federal Claims granting judgment on the administrative record. Because Mr. Johnson was not entitled to additional notice and a separation board prior to his transfer out of the Active Reserve Program and into the Individual Ready Reserve, we affirm.

I

This case involves a complex network of military policies and orders that were promulgated to help our armed forces run effectively and efficiently. To understand whether Mr. Johnson was afforded the proper procedural safeguards under these authorities, we must first step back and examine the statutory and regulatory framework in which they fit.

A

Title 10 is the portion of the United States Code that establishes the United States Armed Forces. It is divided into five subtitles, and Subtitle E provides an overview of the "Reserve Components." 10 U.S.C. Subtitle E (§§ 10001–18506). Each regular component of the armed forces has a corresponding reserve component. *See id.* § 101(c). The stated purpose of the reserve components is:

> to provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency, and at such other times as the national security may require, to fill the needs of the armed forces whenever more units and persons are needed than are in the regular components.

*Id.* § 10102. Relevant here is the Marine Corps Reserve, which is "organized, administered, trained, and supplied under the direction of the Commandant of the Marine Corps." *Id.* § 10109.

Chapter 1209 of Title 10 outlines various ways in which reserve members can be ordered to active duty. One section in this chapter, § 12310, allows the Secretary to:

> order a member of a reserve component under the Secretary's jurisdiction to active duty pursuant to section 12301(d) . . . to perform Active Guard and Reserve [(AGR)] duty organizing, administering, recruiting, instructing, or training the reserve components.

*Id.* § 12310(a). Similarly, § 10211 dictates that "each armed force shall have officers of its reserve components . . . to participate in preparing and administering the policies and regulations affecting those reserve components." *Id.* § 10211.

To fill the AGR positions in the Marine Corps Full-Time Support (FTS) program, the Department of the Navy created the "Active Reserve (AR) Program," outlined in an order from the Commandant of the Marine Corps. Marine Corps Order (MCO) 1001.52J, "Active Reserve (AR) Support to the United States Marine Corps Reserve," June 6, 2011.[1] Order 1001.52J establishes the AR Program as a subset of the Marine Corps Reserve to maintain "a cadre of well-trained and experienced full-time [reserve component] Marines in order to facilitate the integration of the Total Force and assist the Active Component (AC)." MCO 1001.52J at 2. The Order provides that reserve marines who are a part of the AR Program perform the following tasks:

---

[1] The June 2011 version of Marine Corps Order 1001.52J was the version provided in the Joint Appendix and was the active version during the relevant period for this appeal. That version of the order is available at J.A. 584–623. On February 15, 2019, it was cancelled and updated by Marine Corps Order 1001.52K.

> (1) organizing, preparing and administering policies and regulations affecting the [United States Marine Corps Reserve]; (2) training and instructing the [United States Marine Corps Reserve]; (3) recruiting and retention for the [United States Marine Corps Reserve]; and (4) administration of [United States Marine Corps Reserve] personnel.

*Id.*

Attached to Order 1001.52J is the AR Program Policy Manual. *Id.*; *see also id.* at 1-1. The AR Program Policy Manual explains that "a Marine who has successfully reenlisted for a second tour on the AR Program" is a "Career Designated Marine." *Id.* at 3-13. Although "[a] standard tour of duty at each location is considered 36 months," the Policy Manual states that "Career Marines having 12 months or more remaining until their [end of active service date] may also receive [permanent change of station] Orders." *Id.* at 3-5.

B

This case concerns what happens when a Career Enlisted Marine with more than 12 months remaining until their end of active service date refuses permanent change of station (PCS) orders that would require extending their active service. The Policy Manual itself does not provide specific guidance on this point. However, the Policy Manual does not purport to be the sole authority on the AR Program and instead points us to other authorities that detail the proper procedures.

First, for example, the Policy Manual refers the reader to a different order, Marine Corps Order P1300.8R, for "general assignment guidance." *Id.* (citing "reference (n)"); *see also id.* at 1 (identifying reference (n) as Marine Corps Order P1300.8R). Marine Corps Order P1300.8R explains what happens in a situation where a Career Enlisted Marine receives PCS orders that extend beyond their original

end of active service (EAS) date. Specifically, this order explains that a Marine in that situation has two options, either (1) "extend/reenlist in order to have the required active service," or (2) if they do not wish to "extend/reenlist in order to qualify for assignment[,] [they must] sign [a] page 11 SRP entry." Marine Corps Order P1300.8R ¶ 1102.[2]

Second, the Policy Manual elsewhere refers to the Marine Administrative Message as a source regarding the AR Enlisted Career Force. MCO 1001.52J at 3-4, 3-17. The Marine Administrative Message explains that "Career Designated Marines who refuse to reenlist or extend in order to execute PCS [orders] will be released from the AR Program at the effective date of the orders, or EAS, whichever is earlier, with an RE-3O enlistment code." Marine Administrative Message 552/12.

Third, the Policy Manual cites to the then-active version of the Marine Corps Separation and Retirement Manual: Marine Corps Order P1900.16F (Separation Manual).

---

[2] Marine Corps Order P1300.8R was not provided in the Joint Appendix, but ¶ 1102 was quoted by the Court of Federal Claims at J.A. 6. Further, the Board cited to the October 4, 1994 version of Marine Corps Order P1300.8R at J.A. 558. Thus, for the portions cited herein, this court takes judicial notice of the October 4, 1994 version of Marine Corps Order P1300.8R, which is a government document and is publicly accessible at MCO P1300.8R W CH 1-8.pdf (SECURED) (marines.mil). *See, e.g.*, *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) (holding that this court can take judicial notice of publicly accessible government documents because they "are capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned," as required by Federal Rule of Evidence 201(b)) (cleaned up).

*Id.* at 1, 3-2, 3-14, 3-17. The Separation Manual provides procedures for separating Marines under different circumstances. Marine Corps Order P1900.16F at 1-3.[3] It defines "separation" as

> [a] general term which includes dismissal, dropping from the rolls, revocation of an appointment or commission, termination of an appointment, release from active duty, release from custody and control of the Marine Corps*, or transfer from active duty to the: [Individual Ready Reserve (IRR)],* Fleet Marine Corps Reserve, Retired List, Temporary or Permanent Disability Retired List, or Retired Reserve and similar changes in an active or reserve status.

Separation Manual at 1-8 (emphasis added). Discharge, on the other hand, is defined as, "[c]omplete severance from

---

[3] Not all portions of the Separation Manual cited in this opinion were included in the excerpts of the Separation Manual provided to the court in the Joint Appendix. However, the record before the Court of Federal Claims includes more excerpts from the Separation Manual and uses the June 6, 2007 version. *Johnson v. United States*, No. 1:19-cv-00904-ZNS, D.I. 39-1 (Fed. Cl. 2021). Most, but not all, Separation Manual citations herein can be found in the longer excerpted version. *Id.* However, for citations that cannot be found even in the longer excerpt, this court takes judicial notice of the version of Marine Corps Order P1900.16F dated June 6, 2007, which is a government document and is publicly accessible at https://www.usmcu.edu/Portals/218/CEME/courses/MCO%20P1900.16F%20with%20CH%201%20and%202%20SEPSMAN.pdf?ver=2018-09-24-142242-170. *See, e.g.*, *Mobility Workx*, 15 F.4th at 1151; *see also supra* n.2.

all military status gained by appointment, enlistment, or induction." *Id.* at 1-5.

Under ¶ 1005(3) of the Separation Manual, "Marines separated before their expiration of enlistment will be transferred to the IRR subject to the guidance in paragraphs 6311.3 and 6401.5." *Id.* at 1-15. Paragraph 6311.3 sets forth basic notification requirements for when a marine is transferred to the IRR, rather than discharged. *Id.* at 6-58. Paragraph 6401.5 explains when transfer to the IRR, rather than discharge, is appropriate, and it directs the separation authority to "use the procedures in chapter 1 when transferring Marines to the IRR." *Id.* at 6-86. Chapter 1 provides "general instructions on separations," including guidance for preparing a marine's separation forms and assigning the marine a reenlistment code. *Id.* at 1-42. It directs the reader to Appendix I, which is a list of reenlistment codes and their corresponding meanings. Appendix I describes the reenlistment code at issue here, RE-3O, as being assigned when a marine "[r]efuse[s] to extend or reenlist to obtain the obligated service necessary to carry out PCS or UDP." *Id.* at I-3. It further explains that the RE-3O enlistment code makes the reservist ineligible for future promotions, such as a promotion to warrant officer. *Id.*

C

Mr. Johnson is a Career Designated Marine as defined in the Policy Manual. He first enlisted as a reservist in the Marine Corps Reserve in 1999, and in 2006 he extended his enlistment for 23 months to affiliate with the AR Program. After his end of active service date in 2008, Mr. Johnson reenlisted in the Marine Corps Reserve as a member of the AR Program for another three years. In 2011, he reenlisted as a member of the AR Program again, this time for four years. After reenlisting in 2011, his then-scheduled end of active service date became November 9, 2015.

In March 2013, the Marine Corps issued PCS orders for Mr. Johnson to relocate from Virginia Beach to Phoenix to serve as a recruiter in the AR Program for 36 months. His report date for his new station was June 9, 2013, at which point Mr. Johnson would only have 29 months left on his reserve contract. After receiving his PCS orders, Mr. Johnson tried to have his orders changed to stay closer to home because of personal hardship. After he was unsuccessful in that attempt, Mr. Johnson chose not to comply with his orders and stayed in Virginia Beach.

In making this decision not to comply with his orders, Mr. Johnson was counseled by his Sergeant Major that declining to execute his PCS orders would result in administrative consequences. This discussion was memorialized in the following email from his Sergeant Major to his Master Sergeant:

> SSgt Johnson has elected not to execute his orders. I have spoken to him and he knows the outcome of his decision. . . . [His] reasoning is that it would create a hardship for his family. I have tried to get him to use sound judgment in his decision making, but unfortunately he came to this conclusion.

J.A. 136.

On June 11, 2013, after failing to execute his PCS orders, Mr. Johnson signed the following Administrative Remarks form (a "page 11"), which was entered into his service record:

> I have been assigned reenlistment eligibility code RE-3O. Reason: I will not reenlist/extend to comply with PCS orders. *I have been advised that Marines assigned this code are not eligible for promotion*, reenlistment, commissioning or warrant officer programs, special education programs or involuntary

> separation pay unless specifically authorized by the [Commandant of the Marine Corps]. I have been given the opportunity to submit a statement and that statement if submitted, will be filed on the document side of my [Service Record Book].

J.A. 82 (emphasis added).

On June 30, 2013, Mr. Johnson was transferred out of the AR Program and into a different component of the Marine Corps Reserve: the Individual Ready Reserve (IRR). He was also issued a DD Form 214 (certificate of discharge or release from active duty) reflecting the RE-3O code regarding his re-enlistment eligibility.

A few months later, on September 23, 2013, the Marine Corps Reserve mobilized Mr. Johnson from the IRR back to the AR Program, and he was stationed in Quantico, Virginia. J.A. 3. On December 13, 2013, Mr. Johnson was preliminarily approved for appointment to warrant officer, but he was notified on January 14, 2014 that his appointment would be delayed due to the RE-3O code in his record. J.A. 547–48. In 2016, Mr. Johnson reenlisted in the Marine Corps Reserve for two years.

D

On January 18, 2017, Mr. Johnson petitioned the Board of Naval Corrections to remove the assigned RE-3O reentry code and grant his appointment to warrant officer. This petition was denied, and his request for the Board to reconsider was also denied. On June 20, 2019, Mr. Johnson filed suit in the Court of Federal Claims alleging wrongful discharge and denial of military pay. On November 2, 2019, the Court of Federal Claims remanded the case back to the Board for issues not relevant to this appeal.

On July 29, 2020, the Board issued its decision on remand, reasoning that Mr. Johnson's separation and transfer were not the same as the type of separation that results

in termination of employment, and thus his situation did not "fall under the purview of the [Separation Manual] chapter regarding total separation (or firing) from service." J.A. 532. It found that Mr. Johnson's separation did not qualify as an early separation from service because his contract was for four years of service in the Marine Corps Reserve, not a contract to remain in the AR Program element of the Reserve for four years. By being transferred to the IRR, he remained part of the service.

After the Board's decision on remand, both parties filed motions for judgment on the administrative record. The Court of Federal Claims granted the government's motion on October 28, 2021. The court reasoned that Mr. Johnson was properly separated and transferred to the IRR pursuant to the authority in Marine Corps Order P1300.8R ¶ 1102, Marine Administrative Message 552/12, and Marine Corps Separation Manual 1005 ¶ 3. The court further concluded that Mr. Johnson's transfer to the IRR did not entitle him to additional procedural benefits in Chapter 6 of the Separation Manual, including greater notice and a separation board. Mr. Johnson filed a motion to alter or amend judgment, which was denied on December 9, 2021. Mr. Johnson appeals.

## II

We have jurisdiction to review Mr. Johnson's appeal under 28 U.S.C. § 1295(a)(3). We review the grant of a motion for judgment on the administrative record de novo. *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed. Cir. 2007). We do "not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). The trial court's legal conclusions are not reversed unless incorrect as a matter of law, and factual findings are not disturbed unless clearly erroneous. *Heisig v. United States*, 719 F.2d 1153, 1158 (Fed. Cir. 1983). Issues of statutory or

Case: 22-1399 Document: 44 Page: 11 Filed: 08/03/2023



regulatory interpretation are reviewed de novo. *Strickland v. United States*, 423 F.3d 1335, 1337 (Fed. Cir. 2005).

III

Mr. Johnson's appeal raises a single issue: whether he was entitled to greater notice and a separation board prior to his release from the AR Program and transfer to the IRR. We hold that he was not entitled to these additional procedures and thus affirm.

Mr. Johnson was properly released from the AR Program and transferred to the IRR pursuant to the procedures set forth in the AR Program Policy Manual, Marine Corps Order 1300.8R ¶ 1102, Marine Administrative Message 552/12, and Marine Corps Separation Manual 1005 ¶ 3. There is no dispute Mr. Johnson qualifies as a Career Designated Marine under the AR Program Policy Manual, Order 1001.52J at 3-13, nor do the parties dispute that he was properly given PCS orders to relocate to Phoenix in June 2013. *Id.* at 3-5.

Mr. Johnson's refusal to accept those PCS orders and relocate to Phoenix properly triggered the procedures set forth in Marine Corps Order 1300.8R ¶ 1102, Marine Administrative Message 552/12, and Marine Corps Separation Manual 1005 ¶ 3. These orders and regulations apply to this exact scenario, and none of them require greater notice or a separation board prior to this type of separation. Instead, they dictate that a Career enlisted Marine who refuses PCS orders will not be discharged, but rather will be separated from the AR Program and transferred to the IRR with a page 11 notice and an RE-3O reenlistment code. *See* Marine Corps Order 1300.8R ¶ 1102 ("Career enlisted Marines who do not extend/reenlist in order to qualify for assignment will sign [a] page 11 SRB entry [that includes an RE-3O reenlistment code]."); Marine Administrative Message 552/12 ("Career designated Marines who refuse to reenlist or extend in order to execute PCSO will be released from the AR Program at the effective date of the orders, or

EAS, whichever is earlier, with an RE-3O reenlistment code."); Separation Manual 1005 ¶ 3 ("Marines separated before their expiration of enlistment will be transferred to the IRR subject to the guidance in paragraphs 6311.3 and 6401.5.").

This is the same procedure Mr. Johnson was afforded here. After refusing his PCS orders, he was given a page 11 form to sign and was transferred to the IRR with an RE-3O reenlistment code. He was not discharged because he was not "complete[ly] sever[ed] from all military status." Separation Manual at 1-5. Rather, consistent with paragraphs 6311.3 and 6401.5 of the Separation Manual, he was given a DD Form 214 that reflected his release from active duty and an RE-3O reenlistment code. Even though not required by any of the regulations, he was also counseled by his supervisor that refusing his PCS orders would have the above-described consequences. None of the AR Program Policy Manual, Marine Corps Order 1300.8R ¶ 1102, Marine Administrative Message 552/12, or Marine Corps Separation Manual 1005 ¶ 3 require any more notice than Mr. Johnson was provided, nor do they require a separation board. Thus, this process satisfied all the relevant orders and regulations.

Still, Mr. Johnson argues on appeal that he was entitled to greater notice and a separation board prior to being released from the AR Program and transferred to the IRR. We are not persuaded. Starting with his notice argument, it is not entirely clear from the briefs what additional procedures, apart from a separation board, Mr. Johnson would have liked to receive. The only provision cited in Mr. Johnson's opening brief as requiring "specific notification safeguards" is ¶ 6311.3(a) of the Separation Manual. Appellant's Br. 12. But Mr. Johnson has not pointed us to any notification procedure listed in ¶ 6311.3(a) that was

required and that he did not receive upon transfer to the IRR.[4]

And even had this argument been fully briefed, there would be substantial evidence to find that the more limited notification requirements of ¶ 6311.3(a) were met here. Paragraph 6311.3(a) provides:

> Upon transfer to the IRR, the member will be notified of the following:
>
> (1) The characterization of service upon transfer from active duty or the Selected Marine Corps Reserve to the IRR, and that the characterization of service upon completion of the military service obligation in the IRR will be the same.
>
> (2) The date upon which the military service obligations will expire.
>
> (3) The date by which the member must submit evidence of satisfactory completion of the conditions set forth in paragraph 6303.4b(1)(c).

The very next subsection of ¶ 6311.3, subsection (b), then makes clear that "the [additional] notification procedures in paragraph 6303" are only required if "the separation authority proposes to discharge the Marine with a characterization of service less than honorable." Separation Manual ¶ 6311.3(b). Otherwise, no further proceedings are required. *Id.*

Here, as explained above, Mr. Johnson was not discharged—he was transferred to the IRR from the AR Program. When he was released from the AR Program, he was given a DD Form 214 that listed his character of service as "honorable," thereby satisfying the first notification

---

[4] Indeed, this paragraph of the Separation Manual was not even provided to this court in the Joint Appendix.

requirement in ¶ 6311.3(a). J.A. 115. His DD Form 214 also satisfied the second notification requirement because it explains that his reason for separation was "completion of required active service." J.A. 115. This clarifies that he was not separated from the Reserve completely, just from the AR Program (the active service), and therefore the date upon which his military service in the Reserve would expire stayed the same as was listed in his most recent enlistment contract: 48 months from November 10, 2011. J.A. 2. That his service would extend to the date on his contract, regardless of whether he was in the AR Program or in the IRR, is further supported by the statement in the AR Program Policy Manual indicating that a reservist's contractual term reflects service in the Reserve generally, not the AR Program specifically. Marine Corps Order 1001.52J ("Contractual time in the reserve component does not guarantee continued service in the AR Program."). Finally, the third notification requirement is inapplicable to Mr. Johnson because ¶ 6303.4b(1)(c) applies only to "[m]embers of Reserve components not on active duty," and Mr. Johnson was being transferred from an active-duty role in the Reserve to the IRR. Thus, Mr. Johnson has identified no portion of ¶ 6311.3(a) that was required and not met here.

Given that we see no authority requiring some greater level of notice than Mr. Johnson received, we are left only with Mr. Johnson's argument that he was entitled to a separation board under ¶ 6303 of the Separation Manual. We are similarly unpersuaded by this argument because ¶ 6303 is inapplicable here. Paragraph 6303 begins by stating "[t]he procedures and requirements outlined in this paragraph are applicable under *any specific reason for separation contained in section 2*." Separation Manual at 6-42 (emphasis added). But Mr. Johnson was not separated for any of the reasons listed in section 2. *Id.* at 6-16–6-40. Even if he were, not all the reasons for separation in section 2 require a separation board under section 3 (¶ 6303). *Id.* at 6-60–6-63 (providing a table that indicates whether greater

notice or a separation board is required for each reason listed in section 2). Given that (a) Mr. Johnson's separation was for a reason other than the reasons listed in section 2, and (b) even if it were to potentially fit within one of these reasons, Mr. Johnson cannot point us to a specific category so that we might determine whether a separation board is necessary for that category, we are left to conclude that the ¶ 6303 separation board procedures are inapplicable to Mr. Johnson's case.

Mr. Johnson argues that ¶ 6303 should nonetheless apply because his transfer to the IRR falls within the Separation Manual's definition of "separation," Separation Manual ¶ 1002(50), and because chapter 6 states:

> The procedures and instructions in this chapter pertain to the administrative separation of Marines before completion of active or obligated service. Unless specifically authorized by separate order, only the reasons contained in this chapter may form the basis for a Marine's separation, whether voluntary or involuntary.

*Id.* ¶ 6001. But even if Mr. Johnson's release from the AR Program and transfer to the IRR does fall within the broad definition of "separation" in ¶ 1002, nothing in the Separation Manual implies that every type of separation requires a separation board. First, as discussed above, not every type of separation reason contained in *Chapter 6* requires a separation board, let alone separation reasons not in Chapter 6. And second, the court was correct in concluding that the reason for Mr. Johnson's separation was not one of the reasons in Chapter 6 because it was "specifically authorized by separate order[s]," *id.* ¶ 6001, including Marine Corps Order 1300.8R ¶ 1102, Marine Administrative

Message 552/12,[5] and Marine Corps Separation Manual 1005 ¶ 3.

We have considered Mr. Johnson's remaining arguments and find them unpersuasive. Because we agree with the Court of Federal Claims that Mr. Johnson was not entitled to additional notice or a separation board prior to his release from the AR Program and transfer to the IRR, we affirm.

**AFFIRMED**

COSTS

No costs.

---

[5] Mr. Johnson argues that "[t]here is nothing giving [the Marine Administrative Message] the authority to separate Marines early, as was done via [the Marine Administrative Message] 552/12." Appellant's Br. 15. But we need not consider this argument because even if correct, his separation was also authorized by Marine Corps Order 1300.8R ¶ 1102 and Marine Corps Separation Manual 1005 ¶ 3.